Klover E. LAGERSTROM, as surviving spouse of,
and as Special Administrator of the
Estate of Vance H. Lagerstrom,
Plaintiff-Appellant,

v.

MYRTLE WERTH HOSPITAL-MAYO HEALTH SYSTEM,
ABC Insurance Company, its insurer,
Red Cedar Clinic-Mayo Health System,
and DEF Insurance Company, its insurer,
Defendants-Respondents.

Supreme Court

*No. 2003AP2027. Oral argument December 14, 2004.
—Decided July 14, 2005.*

2005 WI 124

(Also reported in 700 N.W.2d 201.)

For the plaintiff-appellant there were briefs by *Charles B. Harris, Martha H. Heidt* and *Doar, Drill & Skow, S.C.,* Baldwin, and oral argument by *Charles B. Harris.*

For the defendants-respondents there was a brief by *Guy DuBeau* and *Axley Brynelson, LLP,* Madison, and oral argument by *Guy DuBeau.*

An amicus curiae brief was filed by *Laura J. Leitch,* Madison, on behalf of the Wisconsin Hospital Association, Inc; and *Mark L. Adams,* Madison, on behalf of the Wisconsin Medical Society.

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.,* Milwaukee; *Bruce R. Bachhuber* and *Hanaway, Weidner, Bachhuber, Woodward & Maloney, S.C.,* Green Bay; *William C. Gleisner, III,* and *Law Offices of William C. Gleisner, III,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is an appeal from a judgment and order of the Circuit Court for Dunn County, William C. Stewart, Jr., Judge. This wrongful death medical malpractice case comes before this court on certification[1] from the court of appeals pursuant to Wis. Stat. § 809.61 (2001–02).[2]

¶ 2. Following a jury's verdict, the circuit court entered judgment in the amount of $55,755 plus costs in favor of Klover Lagerstrom, individually as surviving

---

[1] *Lagerstrom v. Myrtle Werth Hosp.,* 2004 WL 1057849 (Wis. Ct. App. May 11, 2004).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

7

spouse of Vance H. Lagerstrom and as Special Administrator of the Estate of Vance H. Lagerstrom, deceased, referred to collectively as the estate, against Myrtle Werth Hospital-Mayo Health System, ABC Insurance Company, its insurer, Red Cedar Clinic-Mayo System, and DEF Insurance Company, its insurer, referred to collectively as the defendants. The circuit court's order denied a post-verdict motion under Wis. Stat. § 805.14(5)(c)[3] to change the answers on the special verdict; the estate appealed.

¶ 3. The primary issue presented is whether the circuit court erred under Wis. Stat. § 893.55(7) in admitting evidence of collateral source payments in this medical malpractice action, in refusing to admit evidence of the estate's potential obligation to reimburse Medicare, and in instructing the jury that it may, but need not, consider the collateral source payments in determining the reasonable value of the medical services rendered. A second issue is whether the circuit court erred in not awarding the estate $7,610.10 for funeral expenses.

¶ 4. Wisconsin Stat. § 893.55(7) reads:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

---

[3] Wisconsin Stat. § 805.14(5)(c) provides: "*Motion to change answer.* Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer."

¶ 5. We conclude that the text of § 893.55(7) explicitly allows evidence of collateral source payments to be introduced in medical malpractice actions but fails to state the purpose for which the evidence is admitted. We further conclude that if evidence of collateral source payments from sources including Medicare, other state or federal government programs, medical insurance or write-offs, and discounted or free medical services is presented to the fact-finder, then the parties must be allowed to furnish the jury with evidence of any obligations of subrogation or reimbursement. Because the statutory text does not inform a fact-finder what to do with the evidence, in interpreting the statute and determining what a fact-finder must do with the evidence we consider the text of the statute, the legislative history, the legislative goal, and three common-law concepts encompassed in medical malpractice actions and Wis. Stat. § 893.55(7), namely the reasonable value of medical services, the collateral source rule, and subrogation. We conclude that the circuit court must instruct the fact-finder that it must not reduce the reasonable value of medical services on the basis of the collateral source payments. Although the jury is instructed not to use the evidence of collateral source payments to reduce the award for medical services, evidence of collateral source payments may be used by the jury to determine the reasonable value of medical services.

¶ 6. We further conclude that regardless of the interpretation of Wis. Stat. § 893.55(7) adopted, because the jury in the present case was advised of the collateral source payments and the net amount the estate paid for medical services, but was not advised of the estate's potential obligation to reimburse Medicare for medical services, the jury was not able to assess the

reasonable value of medical services fully and fairly. This error in refusing to admit evidence of or argument about the estate's potential obligation to reimburse Medicare is reversible error.

¶ 7. Accordingly, under our interpretation of Wis. Stat. § 893.55(7), and indeed under any interpretation of § 893.55(7), we must reverse the judgment and order of the circuit court and remand the cause to the circuit court for a new trial on the issue of hospital and medical expenses.

¶ 8. On the issue of funeral expenses, the defendants argue that according to Wis. Stat. § 895.04(5),[4] the award of funeral expenses is permissive, not mandatory, and therefore a fact-finder has discretion whether to award these expenses. In the instant case the jury awarded no sum of money to reimburse the estate for funeral and burial expenses even though the jury found that the defendants' negligence was a cause of the decedent's death and even though no evidence controverted the sum of $7,610.10 as a reasonable expense. We hold that under these circumstances the circuit court erred in not granting the estate's motion to change the special verdict answer relating to funeral and burial expenses to reflect the undisputed amount of $7,610.10 for these expenses. On remand, we therefore instruct the circuit court to enter $7,610.10 on the

---

[4] Wisconsin Stat. § 895.04(5) reads:

If the personal representative brings the action [for wrongful death], the personal representative may also recover the reasonable cost of medical expenses, funeral expenses, including the reasonable cost of a cemetery lot, grave marker and care of the lot. If a relative brings the action [for wrongful death], the relative may recover such medical expenses, funeral expenses, including the reasonable cost of a cemetery lot, grave marker and care of the lot, on behalf of himself or herself or of any person who has paid or assumed liability for such expenses.

special verdict form as the amount required to fairly and reasonably compensate the estate for funeral and burial expenses.

¶ 9. For purposes of this appeal the facts are undisputed. The defendants conceded that they were negligent in their care and treatment of the decedent and committed malpractice by inserting a feeding tube into the passageway of the decedent's lung rather than into the stomach and inserting fluids.

¶ 10. The defendants asserted that their negligence caused injury but was not a cause of death. They argued that the decedent's age and medical history, combined with the severe trauma associated with breaking his hip and the ensuing surgery, caused the death some two months after the negligent placement of the feeding tube. The jury found that the defendants' negligence was a cause of the decedent's death. The issue of causation is not before the court in this appeal. The issues before the court involve the jury award of damages for medical services and funeral expenses.

¶ 11. Vance H. Lagerstrom, the decedent, was 87 years old when he fell and broke his hip on November 24, 2000. He was admitted to Myrtle Werth Hospital, and within two days following hip replacement surgery, the family doctor noted some congestion in the decedent's lungs and a fever. A chest x-ray showed no acute damage to the lungs.

¶ 12. On December 2 the duty doctor decided to insert a feeding tube to ensure that the decedent was getting the proper nutrients. The feeding tube was misplaced, reaching into the passageway of the decedent's lung rather than into his stomach. In the

afternoon of December 2, 8 ounces of a nutrient-laden drink, Ensure, was pumped through the feeding tube directly into the decedent's left lung.

¶ 13. The decedent was transferred to the critical care unit, then to Luther Hospital, and then to Lakeside Nursing Home. The decedent remained on a ventilator and on Christmas Day, 2000, was re-admitted to Luther Hospital with a fever, despite treatments with antibiotics. After his fever was controlled, the decedent was returned to Lakeside Nursing Home, where he remained from December 29, 2000 until January 14, 2001, when the fever recurred and he was returned to Luther Hospital.

¶ 14. By February 14, the decedent had been off the ventilator a week, but the following day he was taken to the emergency room of St. Joseph's with joint pain. The decedent then returned to Lakeside Nursing Home. By February 22, the decedent was having problems, including hallucinations. He died on February 24, 2001. The death certificate listed the cause of death as pneumonia.

¶ 15. The decedent's wife initiated a wrongful death medical malpractice action under ch. 655 as the surviving spouse and as the special administrator of the decedent's estate.

¶ 16. Counsel for the estate communicated with Medicare in regard to various medical expenses that Medicare paid. Communications from Medicare indicate that Medicare would rely on its statutory right to reimbursement. Medicare was therefore not joined in the action.

¶ 17. The estate introduced evidence about the reasonable value of the medical services rendered to the decedent. The amount was approximately $89,000. The defendants, over the estate's objections, presented evi-

dence and argued to the jury that the out-of-pocket charges incurred by the estate were only $755, with the remaining medical expenses paid through collateral sources, such as Medicare, medical provider write-offs pursuant to Medicare regulations, and private insurance. The circuit court instructed the jury that the estate's total out-of-pocket expense for medical services was $755.

¶ 18. The jury was instructed that the law does not require it to reduce the sum it determines to be the reasonable value of the medical services caused by the defendants' negligence to reflect payments made by other sources. The jury was further instructed, however, that it may reduce, if it so decides, the amount awarded for the reasonable value of medical services by the amount of collateral source payments.

¶ 19. The circuit court limited the estate's argument to the jury regarding the estate's obligation to reimburse Medicare. The estate could not argue that the estate had potential liability to Medicare. Rather, the estate was forced to argue that the estate could, if it wished, voluntarily repay Medicare.

¶ 20. The circuit court gave the jury special verdict questions with separate instructions on each element of damages as recommended by the Civil Jury Instruction Committee[5] and as required by Wis. Stat.

---

[5] Wis JI—Civil 1750.1 Comment (1998). These instructions are designed for all cases, including medical malpractice cases, involving personal injuries. The Committee recommends the following subdivided verdict format: (1) past medical; (2) future medical; (3) past loss of earning capacity; (4) future loss of earning capacity; (5) past pain, suffering, and disability; and (6) future pain, suffering, and disability. This format was used in the present case.

13

§ 893.55(5).[6] The jury answered the separate verdict questions on damages, awarding the estate $20,000 for the decedent's pain and suffering and awarding the surviving spouse $35,000 for the loss of society and companionship.[7] The jury awarded the estate $755 for medical expenses ("ambulance, medical, hospital, nursing home, rehabilitation, and bed hold expenses") and nothing for funeral expenses.

¶ 21. The focus of the appeal is the circuit court's admission of evidence of collateral source payments for the purpose of determining the reasonable value of the medical services, its refusal to admit evidence of the estate's potential obligation to reimburse Medicare, and its instruction to the jury that it may consider the collateral source payments in awarding damages for the medical expenses.

---

[6] Wisconsin Stat. § 893.55(5) reads as follows:

**(5)** Every award of damages under ch. 655 shall specify the sum of money, if any, awarded for each of the following for each claimant for the period from the date of injury to the date of award and for the period after the date of award, without regard to the limit under sub. (4)(d):

(a) Pain, suffering and noneconomic effects of disability.

(b) Loss of consortium, society and companionship or loss of love and affection.

(c) Loss of earnings or earning capacity.

(d) Each element of medical expenses.

(e) Other economic injuries and damages.

[7] Two jurors dissented on the question of whether the negligent placement of the feeding tube was a cause of the decedent's death and the question of what amount of money would fairly and reasonably compensate Klover Lagerstrom for the loss of society and companionship.

¶ 22. The estate's central objection to Wis. Stat. § 893.55(7) is that in permitting evidence of collateral benefits and in not providing guidance regarding the fact-finder's consideration of this evidence, the legislature has unlawfully delegated public policy and equitable considerations to juries on a case-by-case basis without any guidelines. The estate challenges the constitutionality of § 893.55(7) on several grounds, including violation of separation of powers, right to trial by jury, and equal protection and due process guarantees.[8] We conclude that under a proper interpretation of § 893.55(7), these constitutional issues do not arise.

¶ 23. The estate also asserts it is entitled to $7,610.10 for funeral and burial expenses. The estate's position is that because negligence was conceded, the jury established causation between the negligence and the death, and the funeral expenses were undisputed, the circuit court should have entered that undisputed amount on the verdict, instead of allowing the jury to determine the award. The defendant asserts that the estate is not entitled to a new trial on the funeral and burial expenses because the jury was merely doing what it always does, that is, making a factual determination

---

[8] State courts are divided about the constitutionality of legislative enactments declaring collateral source payments admissible as evidence. For state courts declaring such laws constitutional, see, *e.g., Marsh v. Green,* 782 So. 2d 223 (Ala. 2000); *Barme v. Wood,* 689 P.2d 446 (Cal. 1984). For state courts declaring such laws unconstitutional, see, *e.g., O'Bryan v. Hedgespeth,* 892 S.W.2d 571, 576–78 (Ky. 1995) (violation of separation of powers); *Carson v. Maurer,* 424 A.2d 825, 835–36 (N.H. 1980) (violation of equal protection); *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 715 N.E.2d 1062, 1088–90 (Ohio 1999) (violation of due process).

of the amount of money that would fairly and reasonably compensate the estate for funeral and burial expenses.

## II

¶ 24. The primary issue presented is the interpretation of Wis. Stat. § 893.55(7), a question of law that this court decides independently of the circuit court or court of appeals but benefiting from their analyses. Section 893.55(7) provides that in a medical malpractice action, evidence of compensation for bodily injury received from sources other than the defendant is admissible in a medical malpractice action to recover damages. The statute adds that it does not limit the substantive or procedural rights of persons with subrogation claims. The statute reads as follows:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

¶ 25. This case appears to be the first time an appellate court in this state has considered this statute.

¶ 26. We determine the meaning of Wis. Stat. § 893.55(7) in light of (A) the text of the statute; (B) the legislative history of the statute; (C) the legislative goal in adopting the statute; and three concepts of law embodied in the statute; namely, (D) the valuation of medical services; (E) the collateral source rule; and (F) subrogation.

16

¶ 27. We conclude that the text of § 893.55(7) explicitly allows evidence of collateral source payments to be introduced in medical malpractice actions. We further conclude that if evidence of collateral source payments from sources including Medicare, other state or federal government programs, medical insurance or write-offs, and discounted or free medical services is presented to the fact-finder, then the parties must be allowed to furnish the jury with evidence of any obligations of subrogation or reimbursement. Because the text does not inform a fact-finder what to do with the evidence, in interpreting the statute and determining what a fact-finder must do with the evidence we consider the text of the statute, the legislative history, the legislative goal, and three common-law concepts encompassed in medical malpractice actions and Wis. Stat. § 893.55(7), namely reasonable value of medical services, the collateral source rule, and subrogation. We conclude that the circuit court must instruct the fact-finder that it must not reduce the reasonable value of medical services on the basis of the collateral source payments. Although the jury is instructed not to use the evidence of collateral source payments to reduce the award for medical services, evidence of collateral source payments may be used by the jury to determine the reasonable value of medical services.

A

¶ 28. We examine first the text of Wis. Stat. § 893.55(7). It is only 50 words long, yet covers a large area of the law of damages in medical malpractice cases. Although the instant case involves medical expenses, the statute appears to encompass all damages in a

17

medical malpractice action and to make evidence of all collateral source payments admissible in regard to all damage claims.

¶ 29. Although the statute speaks of compensation to the claimant, the instant case demonstrates that the statute also encompasses payments, write-offs, or forgiveness made directly to health care providers rather than to the claimant. Also, even though the statute uses only the phrase "bodily injury," unlike Wis. Stat. § 893.55(4)(b) and (e), which use both "bodily injury" and "death," it is broad enough to include wrongful death actions.

¶ 30. The statute does not limit the nature of the collateral source payments and thus on its face seems to encompass payments such as those from federal and state governments, life insurance, income continuation plans, and volunteer services, some of which are ordinarily excluded by similar statutes in other states.[9]

¶ 31. The only limitation stated in Wis. Stat. § 893.55(7) is that it does not limit the substantive or procedural rights of persons who have claims based upon subrogation. The legislature obviously attempted to make the statute conform to the rules of subrogation.

¶ 32. The text of the statute does not address numerous issues in relation to medical expenses, the subject of this appeal. First and foremost, the text does not state the purpose for which the evidence of collateral source payments is admissible. The statute does

---

[9] *See, e.g.,* Delaware Code Ann. Tit. 18, § 6862 (introduction of evidence of collateral sources limited to public collateral source of compensation or benefits; statute not applicable to life insurance or private collateral sources of compensation or benefits).

not require that a fact-finder or circuit court reduce the reasonable value of the medical services rendered to account for the collateral source payments. The collateral source rule denies a tortfeasor credit for payments or benefits conferred upon the plaintiff by any person other than the tortfeasor.[10]

¶ 33. The statute is silent about the admissibility of evidence about the expenses a victim incurred to acquire the collateral source payments, such as premiums or other expenditures.[11] The statute neither prohibits nor allows the admission of such evidence.

---

[10] Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6(3), at 493 (2d ed. 1993). Many states abrogating the collateral source rule by statute require the fact-finder or court to reduce the reasonable value of medical services by the amount of collateral source payments. *See, e.g., Reid v. Williams,* 964 P.2d 453 (Alaska 1998) (under terms of the statute, the circuit court makes a mandatory reduction of the award to reflect collateral source payments not provided by government program); *Rudolph v. Iowa Methodist Med. Ctr.,* 293 N.W.2d 550 (Iowa 1980) (statute requires mandatory reduction in award to account for collateral source payments); *Arneson v. Olson,* 270 N.W.2d 125 (N.D. 1978) (statute requires mandatory reduction of award to reflect nonrefundable medical reimbursement benefits received less premiums paid over the five years prior to the medical malpractice).

[11] For example, the Arizona statute that allows evidence of certain collateral source payments also allows the plaintiff to introduce evidence of expenses paid to secure the collateral source payments. The plaintiff may also introduce evidence of the collateral source provider's right to recovery against the plaintiff as reimbursement or under subrogation. The statute further provides that "unless otherwise expressly permitted to do so by statute, no provider of collateral benefits . . . shall recover any amount against the plaintiff as reimbursement for such benefits nor shall such provider be subrogated to the rights of the plaintiff." Ariz. Rev. Stat. Ann. § 12–565 (West 2003).

¶ 34. The statute explicitly states that it does not limit the rights of subrogees but says nothing about the rights of reimbursement. The statute is silent about whether a victim may introduce evidence of subrogation or the victim's obligation to reimburse a collateral source.[12] The statute neither prohibits nor allows the admission of such evidence.

¶ 35. The statute is silent about whether the parties may argue to the fact-finder about the public policies underlying the collateral source rule, such as preventing tortfeasors from benefiting from payments inuring to the victim and deterring tortfeasors. Similarly, the statute does not say whether the public policies underlying subrogation, such as the prevention of double recovery, can be argued to the jury. The statute neither prohibits nor allows such arguments. In sum, the text of the statute raises more questions than it answers.

¶ 36. Even though the legislature did not clearly articulate how fact-finders and courts are supposed to use and apply Wis. Stat. § 893.55(7), and even though the language of the statute does not express a complete abrogation of the collateral source rule in medical malpractice actions, we must interpret Wis. Stat. § 893.55(7) to give effect to the legislature's explicit language allowing the admission of evidence of collateral source payments in medical malpractice actions under chapter 655.

B

¶ 37. The legislative history of Wis. Stat. § 893.55(7) provides some guidance in interpreting the statute.

---

[12] For example, Indiana's statute that allows the admission of proof of collateral source payments other than certain enumerated payments allows admission into evidence of proof of the amount of money the plaintiff is required to repay. *See* Ind. Code Ann., § 34–44–1–2 (West 1998).

¶ 38. An early draft of the bill that became Wis. Stat. § 893.55(7) included a sentence requiring that collateral source payments reduce an award of damages: "The award of damages under ch. 655 shall be reduced by any compensation that the injured party received from sources other than the defendant to compensate him or her for the injury." This sentence does not appear in the enacted statute.

¶ 39. Four documents in the legislative history files cast some light on the deletion of the sentence requiring reduction of an award by collateral source payments and the addition of the sentence protecting subrogation rights.

¶ 40. First, a communication from Employers Health Insurance to Representative Sheryl Albers, Chair of the Assembly Committee on Insurance, Securities and Corporate Policy, in the Legislative Council bill file for 1995 Assembly Bill 36 explains the need to protect subrogation. The communication requested the addition of the last sentence of § 893.55(7). Representative Albers forwarded the communication to Gordon Anderson, Senior Staff Attorney at the Wisconsin Legislative Council. The communication explains Employers Health Insurance's request to protect subrogation as follows:

ASSEMBLY BILL 36 (LRB 1913/3)

After discussions with the author and staff counsel, we reviewed the language again and consulted with our attorneys. Although the language itself does not pose the problem since the collateral source rule and those who have subrogation rights function independently, *we continue to have concerns about future interpretations based on a creative application of the "made whole" doctrine.*

Therefore, we would appreciate your consideration of the following two options for modifications.

1. Insert within the committee record a reference, which would be included in the comment section of the annotation to the statute, the following reference:

"This section (section 7) relates to the collateral source rule. It does not limit the substantive or procedural rights of persons who have claims based upon subrogation."

*2. The alternative would be to amend the bill . . . through the addition of the following language:*

*"This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation."*

It is critical that the reference contained in option one appear within the annotated statutes. If there is a possibility that reference would not appear in comments section, we believe it is necessary to include the statutory language outlined in option two.[13]

¶ 41. It is far from clear what this memorandum means by "creative application" of the made whole doctrine.[14] Employers Health Insurance gives no explanation or examples. Nothing else in the bill file or the

---

[13] Memorandum from Representative Albers to Gordon Anderson, Senior Staff Attorney, Wisconsin Legislative Council, January 23, 1995 (available at Wisconsin Legislative Council, Madison, Wisconsin) (emphasis added).

[14] The "made whole doctrine" in Wisconsin, also called the *Rimes* doctrine, prevents subrogation by acting as a "rule of priority, such that only where an injured party has received an award . . . which pays all of his elements of damages, including those for which he has already been indemnified by an insurer, is there any occasion for subrogation." *Petta v. ABC Ins. Co.,*

drafting records in the Wisconsin Legislative Reference Bureau or Wisconsin Legislative Council explains "creative application" of the made whole doctrine. Thus the memorandum provides no insight about the application of the last sentence of Wis. Stat. § 893.55(7) other than that an insurance company wanted subrogation rights to be protected.[15]

¶ 42. Second, a one-page document entitled *Explanation for Proposed Amendment to Engrossed Assembly Bill 36: Admissibility of Evidence of Other Sources* explains that the mandatory reduction language was deleted to protect subrogation rights of insurance companies. The author and source of this document are not identified and the document is not dated. The document explains that Wis. Stat. § 893.55(7) as proposed and adopted does not require an offset or reduction because some health insurers were concerned that they not lose subrogation rights. The document reads in pertinent part as follows:

> **Explanation:** The first sentence . . . modifies the "collateral source" rule by merely allowing evidence regarding other sources of compensation to be presented to the jury in a medical malpractice action. It does not require an offset or reduction of any malpractice award by the amount of any other payments. Some health insurers expressed concern that this might affect their

---

2005 WI 18, ¶ 28, 278 Wis. 2d 251, 692 N.W.2d 639 (internal quotation and citation omitted).

[15] The collateral source rule has blocked the assertion of subrogation rights even when the insurance policy expressly reserves subrogation rights. *See Ruckel v. Gassner,* 2002 WI 67, ¶ 43, 253 Wis. 2d 280, 646 N.W.2d 11 ("[W]e hold that pursuant to this court's [made whole doctrine cases], an insurer is not entitled to subrogation against its insured unless and until the insured is made whole, regardless of contractual language to the contrary.").

ability to exercise their subrogation rights whereby they pay for an injury, then seek to recover from the plaintiff if the plaintiff receives compensation again through the malpractice award. Accordingly, the last sentence clarifies that subrogation rights (which are seldom exercised) are unaffected.[16]

¶ 43. Not all insurance companies have the same interests in regard to the collateral source rule and subrogation, as this memorandum demonstrates. Insurance companies insuring a victim of medical malpractice for the victim's medical expenses want to retain the collateral source rule and subrogation rights so that they can be reimbursed by the tortfeasor for the payments they made for the victim's medical expenses. In

---

[16] The Explanation for Proposed Amendment to Engrossed Assembly Bill 36 goes on to describe the comments of an American Law Institute Reporter's Study relating to modification of the collateral source rule. These comments were not made in regard to the Wisconsin bill.

> According to a study commissioned by the American Law Institute [*Reporters' Study of Enterprise Liability and Personal Injury,* April 1991, vol. II, p. 167], nearly half of all states . . . have modified the "collateral source" rule to either allow admissibility of other payments made, or, going one step further, to require mandatory offsets to assure there is no double recovery. There are two main reasons for this modification of the collateral source rule. First, economists who have studied the effects of various tort reforms have concluded that collateral source rule modification yields substantial savings in the long run, second only to caps on damages in terms of effect on overall costs. Second, fairness is enhanced by reducing the likelihood of double recoveries and allowing juries to take other compensation into account in determining the amount of an award.

*Explanation for Proposed Amendment to Engrossed Assembly Bill 36: Admissibility of Evidence of Other Sources,* in Drafting Records, Assembly Bill 36 (available at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin).

contrast, insurance companies insuring a health care provider tortfeasor want to eliminate the collateral source rule so that they can pay a victim less money for the victim's medical expenses; these insurance companies want to eliminate subrogation so that they need not pay a victim's insurance company for medical expenses the victim's insurance company paid.[17] The legislature apparently added the last sentence of the statute as some sort of compromise to take into account the divergent interests of different insurance companies. The compromise is, however, unintelligible in the context of Wis. Stat. § 893.55(7).

¶ 44. Third, the legislative files have references to an American Law Institute Reporter's Study that recommended, among other things, that statutory modifications of the collateral source rule should include a provision providing for mandatory reduction of a plaintiff's tort award "by the amount of present and estimated future payments from all sources of collateral benefits except life insurance."[18] The proponents of the bill thus were well aware of the Reporter's Study and deliberately did not adopt the Study's proposed approach.

¶ 45. Fourth, a January 27, 1995 memorandum from Gordon A. Anderson, a Wisconsin Legislative Council staff attorney, to Representative Sheryl Albers (co-chair) and other members of the Assembly Commit-

---

[17] The abolition of the collateral source rule (and subrogation) results in an anomaly: The victim's insurance company compensates the victim for medical expenses and the tortfeasor's insurance company is relieved of paying the victim's medical expenses.

[18] The American Law Institute, II *Reporters' Study: Enterprise Responsibility for Personal Injury* 182 (1991).

tee on Insurance, Securities and Corporate Policy reinforces that the purpose of Wis. Stat. § 893.55(7) is to alter the admissibility of collateral source payments, not to change the substantive application of the collateral source rule. The memorandum candidly admits, and highlights, that § 893.55(7) does not explain the consequences of the admissibility of the collateral source payments. The memorandum reads in relevant part:

5. Collateral Sources

Currently, if an injured party brings an action against a person who allegedly caused that injury, information that the insured party has received benefits for that injury from another source, such as a health insurer or disability income insurer, is *not admissible* as evidence in the action.

Under SECTION 7 of Assembly Bill 36, evidence of any compensation for bodily injury received from sources other than the defendant to compensate for [sic] the claimant for the injury *is admissible* in an action to recover damages for medical malpractice. The provision does not state the consequences of that admissibility (i.e., is the trier of fact expected to award damages based on the difference between the actual damages and the amounts received or to award damages which include the amounts paid by the "collateral sources").[19]

¶ 46. The most reasonable explanation of the statute on the basis of the legislative history is that Wis.

---

[19] Wisconsin Legislative Council Staff Memorandum from Gordon A. Anderson, Senior Staff Attorney, to Representative Albers and Members of the Assembly Committee on Insurance, Securities and Corporate Policy, January 27, 1995 (available at the Wisconsin Legislative Council, Madison, Wisconsin).

Stat. § 893.55(7) became simply a modification of the evidentiary aspect of the collateral source rule, not the substantive aspect.[20]

¶ 47. Although the legislative history indicates the legislature intended to modify what evidence is admissible in a medical malpractice action, it is not clear how that modification impacts our case law defining "reasonable value of medical services" as the reasonable value of medical services rendered, without limitation to amounts paid, or how that modification affects the collateral source rule and subrogation.

¶ 48. The key concepts that emerge from this legislative history are as follows: the collateral source rule is modified, not abrogated; the modification of the collateral source rule is a modification of the rules of evidence to allow evidence of the other payments; the modification is not an explicit modification of the substantive collateral source rule that a collateral source payment does not reduce an award of medical expenses; and subrogation rights are preserved and seem to trump other considerations.

C

¶ 49. The legislative goals are not explicitly set forth in the statute. Section 893.55(7) was adopted in the 1995–96 session to modify the 1975 Liability and

---

[20] *See* Linda J. Gobis, Note, *Lambert v. Wrensch: Another Step Toward Abrogation of the Collateral Source Rule in Wisconsin,* 1988 Wis. L. Rev. 857, 861 ("As a rule of evidence, [the collateral source rule] precludes introduction of evidence regarding any benefits the plaintiff obtained from sources collateral to the defendant. As a rule of damages, it precludes the defendant from offsetting the plaintiff's receipt of collateral compensation against the . . . judgment.").

Patients Compensation Act, which created chapter 655 in the Wisconsin Statutes, along with other provisions governing medical malpractice actions, effective July 1975. Chapter 655 was adopted in reaction to a perceived crisis in medical malpractice.[21]

¶ 50. The immediate goal of Wis. Stat. § 893.55(7) was arguably to provide fact-finders with information about the collateral source payments in the hope that victims would not obtain double recovery as a result of the increased prevalence of both publicly and privately provided medical expense insurance.[22] The ultimate goal of § 893.55(7) would be to reduce health care providers' insurance premiums as a result of a reduction of victims' recoveries.

---

[21] Larry Stephen Milner, Comment, *The Constitutionality of Medical Malpractice Legislative Reform: A National Survey,* 18 Loy. U. Chi. L.J. 1053, 1053 (1986–87); Pamela Mathy, Comment, *Testing the Constitutionality of Medical Malpractice Legislation: The Wisconsin Medical Malpractice Act of 1975,* 1977 Wis. L. Rev. 838, 839–40.

[22] The Delaware Supreme Court declared that the purpose of a similar statute was "to prevent the collection of a loss from a collateral public source (such as Social Security) and then the collection for the same loss from the party or hospital being sued." *Nanticoke Mem'l Hosp., Inc. v. Uhde,* 498 A.2d 1071, 1075 (Del. 1985).

The Arizona supreme court declared that the purpose of its statute is

> to inform the fact finder of the true extent of the plaintiff's economic loss in order to avoid the inequity of windfall recoveries. The resulting judgments will no doubt reflect a set-off for the benefits the plaintiff has already received and these lower judgments would be reflected in lower malpractice insurance premiums, one of the objectives of the legislation. It should be noted that admission into evidence of plaintiffs' collateral benefits in no way guarantees any reduction in the damages awarded by the trier of fact.

*Eastin v. Broomfield,* 570 P.2d 744, 753 (Ariz. 1977).

¶ 51. We therefore examine possible interpretations of Wis. Stat. § 893.55(7) with the legislative history and goals in mind, along with three key legal concepts implicated in Wis. Stat. § 893.55(7): the valuation of reasonable medical expenses; the common law collateral source rule; and subrogation. We shall discuss these three concepts in turn and then finally set forth our interpretation of § 893.55(7) in light of the text, the legislative history, the legislative goal and these concepts.

**D**

¶ 52. In calculating damages, a person injured by medical malpractice may recover the reasonable value of the medical services reasonably required by the injury.[23] We have recognized that in "most cases [the reasonable value of medical services] is the actual expense, but in some cases it is not. But the test is the reasonable value, not the actual charge, and therefore there need be no actual charge."[24] It is not a controversial proposition that the recovery is for the value of the

---

*See also* Milner, *supra* note 21, at 1068 ("An increase in insurance protection nationwide, combined with utilization of this [collateral source] rule, however, has resulted in multiple recoveries.").

[23] *Thoreson v. Milwaukee & Suburban Transp. Co.*, 56 Wis. 2d 231, 243, 201 N.W.2d 745 (1972).

[24] *Id. See also Koffman v. Leichtfuss*, 2001 WI 111, ¶ 56, 246 Wis. 2d 31, 630 N.W.2d 201 ("[W]e have determined that the plaintiff was entitled to seek recovery of the reasonable value of the medical expenses rendered without limitation to the amounts paid by the plaintiff and his insurers."); *Ellsworth v. Schelbrock*, 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764 (court concluded that the collateral source rule applies to medical

services, not for the expenditures actually made or the obligations incurred.[25] That medical and nursing services are rendered gratuitously "should not preclude the injured party from recovering the value of the services as part of his compensatory damages."[26]

¶ 53. The defendants argue that Wis. Stat. § 655.009(2), enacted in 1975, changed the standard for determining the reasonable value of medical services in medical malpractice cases. Section 655.009(2) provides that "[t]he court or the jury, which ever is applicable, shall determine the amounts of medical expense payments previously incurred and for future medical expense payments."

¶ 54. We are not persuaded that this statute changes the long-standing rule that the "reasonable value of medical services" is the reasonable value of medical services rendered, without limitation to amounts paid. This long-standing rule has been applied in both chapter 655 medical malpractice actions and in other actions as the method for determining the reasonable value of medical services.

---

assistance benefits; rejected argument that recipient of public assistance did not incur liability for medical expenses and was not entitled to award of damages or benefit of collateral source rule). *See also* I *The Law of Damages in Wisconsin* § 9.9, at 8 (Russell Ware ed., 4th ed. 2005).

[25] *See* I *The Law of Damages in Wisconsin, supra* note 24, § 9.9, at 8 n.32 ("Several Wisconsin cases have reaffirmed the general rule that the plaintiff, on the basis of the collateral source rule and principles of subrogation, is entitled to recover the reasonable *value* of the health care services rendered rather than the amount actually *paid* to the provider." (citing *Koffman* and *Ellsworth*)).

[26] *Thoreson,* 56 Wis. 2d at 243.

■

¶ 55. The most logical interpretation of Wis. Stat. § 655.009(2) is that the court or jury should determine past and future medical expenses based on the common-law standard for determining such damages. We agree with the amicus curiae brief of the Wisconsin Academy of Trial Lawyers that if the legislature had intended in 1975 to make the measure of damages in medical malpractice actions "payments" for medical services actually made by the victim, it need not have adopted Wis. Stat. § 893.55(7) to modify the collateral source rule.

E

■

¶ 56. We next examine the second, related principle implicated by Wis. Stat. § 893.55(7), the well-recognized common law collateral source rule. The collateral source rule helps claimants recover the "reasonable value of the medical services, without limitation to the amounts paid."[27] Regardless of the method of financing the victim's medical expenses, a tortfeasor's liability is the reasonable value of the treatment rendered without limitation to the amounts actually paid by the victim. "Under the collateral source rule, the amount of damages awarded to a person injured because of another individual's tortious conduct is not reduced when the injured party receives compensation from another source . . . ."[28]

---

[27] *Koffman,* 246 Wis. 2d 31, ¶ 2.

[28] *Ellsworth,* 235 Wis. 2d 678, ¶ 1. We cited Restatement (Second) of Torts § 920A adopting the collateral source rule with approval in *Ellsworth* at ¶ 8.

¶ 57. The policy basis for the collateral source rule is that a tortfeasor who is legally responsible for causing an injury should not be relieved of his or her obligation to compensate the victim simply because the victim has the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses.[29] An underlying justification for the rule is that should a windfall arise because of an outside payment, the party to profit from that collateral source should be the injured person, not the tortfeasor.[30] The collateral source rule also ensures that the liability of similarly situated tortfeasors is not dependent on the relative fortuity of the manner in which each victim's medical expenses are financed.[31] Moreover, although some plaintiffs may get duplicate recovery, many successful plaintiffs are far from fully compensated, considering, for example, attorney fees and costs.

¶ 58. Furthermore, the collateral source rule is designed to deter wrongdoing; the rule "deter[s] negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor."[32]

¶ 59. Those critical of the collateral source rule argue that the rule allows a victim a double recovery: a payment by the tortfeasor and a payment by a collateral source.

---

[29] *Koffman,* 246 Wis. 2d 31, ¶ 29.

[30] *Id.* (citing *Campbell v. Sutliff,* 193 Wis. 370, 374, 214 N.W. 374 (1927), *overruled on other grounds by Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 92, 102 N.W.2d 393 (1960).

[31] *Koffman,* 246 Wis. 2d 31, ¶ 31.

[32] *Ellsworth,* 235 Wis. 2d 678, ¶ 7 (quoted source omitted).

¶ 60. This court has applied the collateral source rule in recent cases. For example, in *Koffman v. Leichtfuss,* 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201, an automobile accident case, the tortfeasor argued that because the plaintiff's insurer had subrogation rights against the defendant tortfeasor, the plaintiff was entitled only to amounts he actually paid for medical services. The circuit court allowed the plaintiff to argue for the full amount of medical expenses while simultaneously allowing the defendants to argue that the plaintiff should recover only for the amount he actually paid. The jury reduced its award to the plaintiff for medical services by the amount of the collateral source payments, and in response to post-verdict motions, the circuit court further reduced the award to the amounts actually paid by the plaintiff.

¶ 61. We recognized in *Koffman* that the plaintiff often does not incur out of pocket expenses for medical services, stating:

> The modern health care system employs a myriad of health care finance arrangements. As part of the system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being "written-off" by the health care provider.[33]

Wisconsin Stat. § 893.55(7) was not at issue in *Koffman,* and the collateral source rule was fully operational in that case. The plaintiff in that case was entitled to seek recovery of the reasonable value of the

---

[33] *Koffman,* 246 Wis. 2d 31, ¶ 21.

medical services without limitation to the amounts paid.[34]

¶ 62. The collateral source rule works in conjunction with subrogation and reimbursement. Plaintiffs do not necessarily actually receive a double recovery even if they collect fully from both the tortfeasor and the collateral source, because a collateral source may have a right of subrogation or reimbursement.[35]

¶ 63. Wisconsin Stat. § 893.55(7) explicitly provides that it does not limit the substantive or procedural rights of persons who have claims based upon subrogation. As we explained previously, the legislature did not mandate that a fact-finder offset collateral source payments in determining the reasonable value of medical services to protect subrogation. Subrogation helps reduce an insurer's losses and makes it at least theoretically possible for an insurer to limit premium charges accordingly. The protection of subrogation has therefore been used to justify the collateral source rule.[36] The relationship of § 893.55(7) to the collateral source rule and subrogation dictates to a large extent the interpretation of the statute.

F

¶ 64. We turn now to the third legal principle embodied in the statute, subrogation. By virtue of payments made on behalf of the victim (the subrogor), a payor (subrogee) sometimes obtains a right to recover these payments in an action against a tortfeasor and is

---

[34] *Id.*, ¶¶ 2, 31.

[35] Dobbs, *supra* note 10, § 8.6 at 496.

[36] *Id.*, § 8.6(3), at 496–97.

a necessary party in an action against the tortfeasor.[37] Subrogation exists to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the victim (the subrogor) from being unjustly enriched through a double recovery, namely recovering from both the paying party (the subrogee) and the tortfeasor.[38] An entity with a subrogation right can waive the right to subrogation in favor of reimbursement.[39] Successful plaintiffs thus must sometimes reimburse sources of collateral payments out of tort recoveries. The principles of subrogation therefore are applicable when the right is asserted as a reimbursement.

¶ 65. Subrogation ordinarily works in tandem with the collateral source rule to further the goals of both rules.[40] The collateral source rule prevents benefits received by the victim from inuring to the tortfeasor, and subrogation prevents the victim from receiving a double recovery because the payor of the benefits may recover the payments from the tortfeasor or the victim.[41] In other words, when the risk of double recovery on the part of the victim does not exist because the payor may seek subrogation, the collateral source rule applies.[42]

¶ 66. In other states with statutes admitting collateral source payments in evidence, subrogation rights are explicitly not protected, and the payor of the collateral source payments (the subrogee) is prohibited from

---

[37] *Koffman,* 246 Wis. 2d 31, ¶ 33 (citations omitted).

[38] *Id.*

[39] *Jindra v. Diederich Flooring,* 181 Wis. 2d 579, 596, 511 N.W.2d 855 (1994).

[40] *Koffman,* 246 Wis. 2d 31, ¶ 40.

[41] *Id.*

[42] *Id.*

receiving reimbursement.[43] In contrast, the Wisconsin legislature chose in Wis. Stat. § 893.55(7) to protect the substantive or procedural rights of persons who have claims based upon subrogation.[44] This choice is clear on the face of the statute and in the legislative history, as we previously explained.

¶ 67. Any interpretation of § 893.55(7) must therefore take into account that the statute does not limit the rights of claims based on subrogation.

### III

¶ 68. With these principles in mind, we interpret Wis. Stat. § 893.55(7).

¶ 69. The text of § 893.55(7) renders admissible evidence of any compensation for bodily injury received

---

[43] This alternative is recommended by the American Law Institute, II *Reporters' Study of Enterprise Responsibility for Personal Injury* 161–82 (1991).

For other states' treatment of subrogation, *see, e.g.,* Ala. Code § 12–21–45 (2001)(upon proof by plaintiff that the plaintiff is obligated to repay the medical expenses which have been reimbursed, evidence of plaintiff's reimbursement or payments is admissible); Cal. Civ. Code § 3333.1(b) (2005) (no source of collateral benefits introduced in evidence shall recover any amount against the plaintiff nor be subrogated to the rights of the plaintiff against a defendant).

[44] The Wisconsin statute does not explain how the subrogee's rights are to be protected. In contrast, the Kentucky statute provides that a plaintiff must notify subrogees that their failure to assert subrogation rights by intervention in that lawsuit will result in loss of those rights with respect to the final award the plaintiff receives. *See* Ky. Rev. Stat. Ann. § 411.188 (2004). This statute was declared unconstitutional on grounds unrelated to this provision. *See O'Bryan v. Hedgespeth,* 892 S.W.2d 571 (Ky. 1995).

from sources other than the defendant to compensate the claimant for bodily injury in a medical malpractice damage action. The text does not direct the fact-finder how to consider or use evidence of collateral source payments. The Wisconsin statute, unlike statutes in other states, does not require an offset or reduction of any malpractice award by the amount of collateral source payments.

¶ 70. According to the legislative history, the first sentence of Wis. Stat. § 893.55(7) modifies the collateral source rule by merely allowing evidence regarding other sources of compensation to be presented to the jury in a medical malpractice action. Wisconsin Stat. § 893.55(7) modified, but did not abrogate, the long-standing common-law collateral source rule that the reasonable value of medical services is the full value of the medical services, not limited by any collateral source payments.

¶ 71. The rights of persons whose claims are based on subrogation are not limited by Wis. Stat. § 893.55(7), as the last senten'ce in the statute makes clear. The sentence in the original draft of the statute requiring that damages under ch. 655 shall be reduced by any compensation the injured party received from sources other than the defendant made insurance companies worry that their subrogation rights would be adversely affected, and the sentence was therefore eliminated.

¶ 72. In order for subrogation (or reimbursement) and the collateral source rule to work in tandem to prevent a victim's double recovery and protect subrogation, Wis. Stat. § 893.55(7) must be interpreted to require courts to instruct juries to consider the collateral source payments only in determining the reasonable value of the medical services rendered.

37

¶ 73. An alternative interpretation of Wis. Stat. § 893.55(7), that is, to allow a fact-finder to offset the collateral source payments, leaves many questions unanswered that the legislature could not have intended this court to answer. The statute is silent about the parties' ability to introduce evidence or argue about the obligation to repay collateral sources. The statute is silent about the admissibility and consideration by the fact-finder of expenses the victim incurred to acquire the collateral source payments. The statute is silent about the ability of the parties to argue to the fact-finder the public policies underlying the collateral source rule and subrogation. The statute is silent about the ability of the parties to argue about the inequity resulting to health care providers who receive reduced payments for the care they provide to patients as a result of rules governing Medicare and other programs, while the reasonable value of medical services is valued at the full reasonable value. With so many unresolved issues regarding a fact-finder's ability to make discretionary off-sets, we must conclude that the legislature intended that the jury not do so.

¶ 74. We conclude that the text of § 893.55(7) explicitly allows evidence of collateral source payments to be introduced in medical malpractice actions. We further conclude that if evidence of collateral source payments from sources including Medicare, other state or federal government programs, medical insurance or write-offs, and discounted or free medical services is presented to the fact-finder, then the parties must be allowed to furnish the jury with evidence of any potential obligations of subrogation or reimbursement. Because the text does not inform a fact-finder what to do with the evidence, in interpreting the statute and

determining what a fact-finder must do with the evidence we consider the text of the statute, the legislative history, the legislative goal, and three common-law concepts encompassed in medical malpractice actions and Wis. Stat. § 893.55(7), namely reasonable value of medical services, the collateral source rule, and subrogation. We conclude that the circuit court must instruct the fact-finder that it must not reduce the reasonable value of medical services on the basis of the collateral source payments. Although the jury is instructed not to use the evidence of collateral source payments to reduce the award for medical services, evidence of collateral source payments may be used by the jury to determine the reasonable value of medical services.

¶ 75. The facts of this case illustrate that our interpretation of Wis. Stat. § 893.55(7) fulfills the legislative policies and objectives. In this case, Medicare was not a party but has rights of reimbursement from the parties. The concepts of reimbursement and subrogation are similar.

¶ 76. If the estate recovers an award for the value of the medical services rendered, the estate would not necessarily have a double recovery because it would have an obligation to reimburse Medicare. In the instant case, the attorney for the estate received three lengthy letters (dated July 30, 2001; December 12, 2001; and January 22, 2002 respectively) from Medicare, each advising the attorney in boldface type of the estate's obligation to reimburse Medicare for Medicare payments out of any recovery or settlement it receives as a result of the litigation. Because Medicare may seek reimbursement, to protect Medicare's right of reimbursement the collateral source rule should apply. That is, the fact-finder should be advised of the estate's potential obligation to Medicare and the fact-finder

should not reduce an award to the estate by the collateral source payments by Medicare because of the potential obligation to repay Medicare.[45] The defendants assert that they, too, may be liable to Medicare. It does not appear that § 893.55(7) can at the same time allow an offset for collateral source payments, protect the parties to the action, and protect the rights of Medicare, which provided collateral source payments. Accordingly, the jury may hear evidence of collateral source payments and evidence relevant thereto to determine the reasonable value of the medical services but must not use the collateral source payments as an offset to determine the reasonable value of the medical services.

¶ 77. Because the circuit court failed to advise the jury that it must not reduce its award for the reasonable value of medical expenses by the amount of the collateral source payments, we reverse the circuit court's judgment and order and remand the cause for a new trial in accordance with this decision on the issue of the hospital and medical expenses.

IV

¶ 78. Irrespective of the interpretation of Wis. Stat. § 893.55(7) adopted, the circuit court committed prejudicial error and a new trial must be held on the issue of the hospital and medical expenses.

¶ 79. In this case the estate's counsel requested an instruction informing the jury that the estate was obliged to reimburse Medicare. The estate's proposed jury instruction would have allowed the jury to hear and consider evidence of collateral source payments in

---

[45] *Koffman,* 246 Wis. 2d 31, ¶ 40.

determining the reasonable value of medical services. The proposed instruction would also have allowed the jury to consider the estate's potential obligation to reimburse Medicare. The estate's proposed instruction read as follows:

### Collateral Source Payments

Under the law in the State of Wisconsin, an injured party, or that party and Medicare, is usually entitled to recover the reasonable value of medical services of which the negligence of a person is a cause, whether or not the services are provided for free, and regardless of whether or not an insurer or Medicare pays the bill. The purpose of this rule is to hold the negligent parties accountable for their acts by holding them responsible for the value of the damages they have caused.

However, in medical negligence cases such as this one, Wis. Stat. § 893.55(7) allows you to hear testimony regarding payments made by Medicare and insurance sources. The statute does not require you to reduce the sum found by you to be the reasonable value of the medical services of which the negligence of the defendants was a cause by any payment made by any such source. You may do so.

You are instructed, however, that the Estate of Vance Lagerstrom is obligated to reimburse Medicare for expenditures made by it.

The circuit court did not use this proposed jury instruction.

¶ 80. The circuit court did not even allow the estate to tell the jury that it might have a potential obligation to reimburse Medicare.[46] The circuit court ruled that the estate could, if it wished, argue that the

---

[46] R. 127:125–26.

estate "could reimburse Medicare." It could not argue that the estate might be required to do so.

¶ 81. The instruction given did not advise the jury of the estate's potential obligation to reimburse Medicare. The jury was instructed as follows:

ESTATE'S RECOVERY FOR MEDICAL, HOSPITAL, AND FUNERAL EXPENSES

Subdivision (b) of question 4 asks what sum of money will fairly and reasonably compensate the Estate of Vance Lagerstrom for the reasonable value of the medical and hospital expenses necessarily and reasonably incurred in the care of him from the date of the Ensure infusion incident to the time of his death, because of the injuries resulting to him as a result of the Ensure incident.

In medical negligence cases such as this one, you are allowed to hear testimony regarding payments made by Medicare, insurance and other sources. The law does not require you to reduce the sum found by you to be the reasonable value of the medical services of which the negligence of the defendants was a cause by any payment by any such source. You may do so. It is for you the jury to decide.

¶ 82. This jury instruction is infirm, aside from any consideration of Wis. Stat. § 893.55(7). The instruction given to the jury is deficient because it does not alert the jury that the estate is potentially obligated to reimburse Medicare.

¶ 83. The estate contended at trial that it had a legal obligation to reimburse Medicare for Medicare's payments for medical expenses. According to the record, Medicare explicitly asserted its intention to seek reimbursement for its payments.

42

¶ 84. Nevertheless, the circuit court barred the estate from introducing evidence of its potential obligation to reimburse Medicare and further barred the estate from arguing to the fact-finder that it would not be getting a double recovery if the fact-finder awarded it the full reasonable value of medical services.

¶ 85. According to the calculation of the reasonable value of medical services rendered, the collateral source rule and subrogation (or reimbursement), the risk of double recovery on the part of the estate did not necessarily exist in the present case. The circuit court forced the defense counsel to argue an incorrect interpretation of law to the jury, namely that the estate merely had the option to repay Medicare. Under these circumstances the jury did not have full information to decide the value of reasonable medical services, and any decision was erroneous. The real controversy has not been fully tried.[47]

¶ 86. The estate was clearly prejudiced when the circuit court barred the estate from introducing evidence about its potential obligation to Medicare and gave an instruction that did not refer to the estate's potential obligation to reimburse Medicare. The result was that the estate recovered only $755 for medical expenses although it may have to reimburse Medicare for a significantly larger sum.[48]

¶ 87. The defendants argue that much of the decedent's medical treatment did not relate to the medical malpractice and that the estate failed to prove what specific charges Medicare paid for services that

[47] *Morden v. Cont'l AG*, 2000 WI 51, ¶ 89, 235 Wis. 2d 325, 611 N.W.2d 659.

[48] *See, e.g.*, 42 C.F.R. 411.24, 411.37.

related to the medical malpractice. The defendants also argue that the difficulties facing the estate stem not from Wis. Stat. § 893.55(7) or the instructions but from the estate's failure to name Medicare as a party. The defendants contend that had Medicare been named as a party, the statute presumably would have worked as intended: Evidence of Medicare's payments would have been admitted and subject to cross-examination; Medicare would have been on the verdict and the issue of the estate's obligation to Medicare would no longer exist. The defendants assert that they too have a potential liability to Medicare, and that they would be subject to double liability if the jury awarded greater medical expenses to the estate than the $755 awarded. In sum, according to the defendants, neither party should have been allowed to argue specifically about Medicare because Medicare was not a party. Yet Medicare considerations were important, once its payments were submitted to the jury.

¶ 88. The effect of the circuit court errors on the estate was significant. The jury was not informed of the crucial fact that the estate may be responsible to Medicare for all or part of $89,000. By not allowing the jury to hear evidence that Medicare could recover a sum in excess of $755 from the estate, the circuit court committed reversible error.

¶ 89. Irrespective of the proper interpretation of Wis. Stat. § 893.55(7), we conclude that the circuit court erred in not admitting evidence of the estate's potential obligation to reimburse Medicare. Accordingly, we reverse the circuit court's judgment and order and remand the cause for a new trial on the issue of the hospital and medical expenses.

44

## V

¶ 90. We turn next to the issue of funeral expenses. At the close of the five-day trial, in response to Question Number 4 on the special verdict,[49] the jury declined to award the estate any compensation for funeral expenses. Undisputed evidence at trial established that the funeral expenses totaled $7,610.10. The jury found the defendants' negligence was a cause of the decedent's death.[50]

¶ 91. After trial the estate moved, pursuant to Wis. Stat. § 805.14(5)(c), to have the answers in the verdict changed on the ground that the evidence was insufficient to sustain the answer.[51] In response to the estate's post-verdict motion on the issue of funeral expenses, the defendants argued that under Wis. Stat. § 895.04, the jury "may" award funeral expenses, but that a jury is not required to do so. The defendants argued that "[t]he evidence in this case establishes that

[49] Special Verdict Question Number 4 read: "What sum of money will fairly and reasonably compensate the Estate of Vance Lagerstrom for damages in each of the following respects: a. His pain and suffering: $20,000. b. Ambulance, medical, hospital, nursing home, rehabilitation, and bed hold expenses: $755. c. Funeral Expenses: $0."

[50] Special Verdict Question Number 3 read: "Was the negligence of such agents and employees of Myrtle Werth and Red Cedar Clinic a cause of Vance Lagerstrom's death? Answer: Yes."

[51] Wisconsin Stat. § 805.14(5)(c) reads: "Motion to Change Answer. Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer."

The defendants also moved for a change in the verdict answer on the ground that evidence at trial did not support the jury's finding of negligence.

45

the jury could have concluded that the decedent was going to die anyway ... ," and that the estate was going to incur funeral expenses regardless of what illness eventually killed the decedent.

¶ 92. The circuit court denied the estate's motion for a change in the verdict to award funeral expenses and entered judgment reflecting the jury's award of $0 for funeral expenses.

■

¶ 93. Like the circuit court, "when [this court is] requested to change an answer [or answers] in a jury verdict, . . . [we will view] the evidence . . . in the light most favorable to the verdict and the verdict will be affirmed if supported by any credible evidence."[52] In the alternative, the estate argues that this court should determine the reasonable value of the funeral expenses and order the defendants to accept additur under Wis. Stat. § 805.15(6)[53] or retry the issue of the funeral expenses.

¶ 94. The instruction to the jury read in relevant part: "Subdivision (c) of question 4 asks what sum of money will fairly and reasonably compensate the Estate

---

[52] *Nelson v. Travelers Ins. Co.,* 80 Wis. 2d 272, 282–83, 259 N.W.2d 48 (1977) (citing *Roach v. Keane,* 73 Wis. 2d 524, 536, 243 N.W.2d 508 (1976)).

[53] Wisconsin Stat. § 805.15(6) reads in relevant part:

Excessive or inadequate verdicts. If a trial court determines that a verdict is excessive or inadequate, not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount.

of Vance Lagerstrom for the funeral and burial expenses of Mr. Lagerstrom."[54]

¶ 95. Eventually, we all must die.[55] But that fact does not mean that a fact-finder may refuse to award funeral and burial expenses when the victim of the medical malpractice is elderly and, in the absence of medical malpractice, was likely to die sooner than a younger victim. The malpractice was a cause of the death and the tortfeasor is liable, as a matter of law, for reasonable funeral and burial expenses.

¶ 96. It is the role of the circuit court to change an answer on the verdict if there is a complete lack of *any* evidence to support the answer, and it was error here for the circuit court to deny the estate's motion to change the answer regarding the fair and reasonable amount of funeral expenses. The undisputed evidence was that funeral expenses totaled $7,610.10. The defendants offered no evidence, credible or otherwise, to dispute this figure. Upon a finding of negligence and causation, the fair and reasonable amount necessary to

---

[54] *Richards v. Mendivil,* 200 Wis. 2d 665, 671–72, 548 85 (Ct. App. 1996) ("However, an appellate court may overturn the trial court's decision to change the jury's answers if the record reveals that the trial court was 'clearly wrong.' ") (citing *Weiss v. United Fire & Cas. Co.,* 197 Wis. 2d 365, 389, 541 N.W.2d 753 (1995)).

[55] Horace, *We All Must Die* (Samuel Johnson trans. 1760).

The circuit court reasoned as follows: "And I think I'll apply my common sense. [The jurors'] belief was that even without the negligence of the defendants this family and the estate of Vance Lagerstrom were in a very short period of time going to be required to pay those expenses, even without the negligence of the defendants."

compensate the estate for the funeral expenses in the absence of any evidence to the contrary was $7,610.10.

¶ 97. The circuit court should have entered the sum of $7,610.10 on the special verdict form in response to the question asking what amount would fairly and reasonably compensate the estate for the funeral expenses. In fact, the parties contemplated having the circuit court do just that, although because of the timing of the estate's request, it was decided to let the question go to the jury.[56] Nevertheless, it is the long-standing rule that:

> In drafting a special verdict the trial court must first consider the issues raised by the pleadings. [The court] should then eliminate from the issues so raised those

---

[56] Just before submitting the special verdict form to the jury, the circuit court and counsel discussed having the court enter the amount of funeral expenses:

THE COURT: All right. Any other comments or concerns about the verdict form?

MR. HARRIS [Counsel for estate]: I don't have a strong feeling, your Honor. I would think that question 4 C, funeral expenses, could be answered by the Court. But — 4 C, funeral, 7610.10 on Exhibit 11.

MR. DUBEAU [Co-Counsel for the defendants]: Yeah. I guess I don't have a problem with that. I don't know if the Court then needs to do the "I've answered the damage question" instruction as well, too.

MR. HARRIS: That's fine. Just leave it the way it is.

THE COURT: Thank you.

MS. LUBINSKY [Co-Counsel for the defendants]: That might be too confusing at this point.

THE COURT: Yep.

that are determined by the evidence on the trial by admissions, *by uncontradicted proof, or by failure of proof.*[57]

Here there the undisputed amount of the funeral expenses was $7,610.10. Defendants offered no evidence that this amount was unreasonable or otherwise unwarranted. They implicitly conceded as much in the colloquy before submission of the special verdict form to the jury.

¶ 98. For the foregoing reasons, we reverse the circuit court's order denying the estate's motion for a change of the answer on the special verdict form and order the circuit court on remand of the cause to enter the amount of $7,610.10 on the special verdict form for reasonable funeral expenses.

¶ 99. For the foregoing reasons, we conclude that although the text of Wis. Stat. § 893.55(7) renders admissible evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant in a medical malpractice damage action, § 893.55(7) requires that a jury be instructed not to reduce the award for medical services in the amount of the collateral source payments; the jury may consider, however, collateral source payments in determining the reasonable value of the medical services rendered.

¶ 100. We therefore reverse the judgment of the circuit court relating to the award to the estate for hospital and medical expenses and remand the cause to the circuit court for a new trial on the issue of hospital

---

[57] *Allen v. State Farm Fire & Cas. Co.,* 71 Wis. 2d 212, 216, 238 N.W.2d 104 (1976) (emphasis added) (quoting *Bell v. Duesing,* 275 Wis. 47, 53, 80 N.W.2d 821 (1957)); *see also Dahl v. K-Mart,* 46 Wis. 2d 605, 609, 176 N.W.2d 342 (1970).

and medical expenses. We further order the circuit court on remand of the cause to enter the amount of $7,610.10 on the special verdict form for reasonable funeral expenses.

*By the Court.*—The judgment and order of the circuit court are reversed and the cause is remanded.

¶ 101. PATIENCE DRAKE ROGGENSACK, J. *(concurring in part and dissenting in part).* I concur in the majority opinion's conclusion that Klover Lagerstrom and the estate of Vance Lagerstrom (Lagerstrom) proved its claim for funeral expenses of $7,610.10. Majority op., ¶ 8. Therefore, I would order that the circuit court enter a judgment modified accordingly. I also concur in the majority opinion's conclusion that Wis. Stat. § 893.55(7) is constitutional. Majority op., ¶ 22. However, I dissent from the majority opinion's conclusion that evidence admitted pursuant to § 893.55(7) could not be used by a fact-finder to abrogate Wisconsin's collateral source rule[1] in this case. Majority op., ¶ 5.

¶ 102. The legislature enacted Wis. Stat. § 893.55(7) in order to reduce health care providers' insurance premiums by reducing medical malpractice jury verdicts through the use of evidence of expenses[2] that the plaintiff has incurred, but has not paid. In

---

[1] Under the collateral source rule, the damages that a plaintiff is entitled to recover from a defendant cannot be reduced by payments or benefits from other sources. *Koffman v. Leichtfuss,* 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201.

[2] I address only medical expenses here, but I agree with the majority that the statute is not so limited and could cover other types of payments made to a plaintiff due to the fault of the tortfeasor. Majority op., ¶ 28. However, I do not agree that the statute goes so far as to contemplate evidence of "volunteer services." Majority op., ¶ 30.

50

order to achieve the legislature's purpose, when third parties with rights of subrogation or direct action have not been joined, a jury must be able to reduce the damages awarded to a plaintiff for amounts the plaintiff has not paid, thereby abrogating the collateral source rule under those circumstances. Because the United States government was not joined in the lawsuit, the case before us presents a fact-finder's reduction of health care expenses for amounts the Lagerstroms have not paid, which I conclude is permissible under § 893.55(7). Accordingly, because I would affirm the judgment of the circuit court, as modified to include an award of $7,610.10 for funeral expenses, I do not join the majority opinion.

A. Standard of Review

¶ 103. This appeal requires us to interpret Wis. Stat. § 893.55(7), which is a question of law that we review without deference to the circuit court's interpretation. *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis.2d 68, 695 N.W.2d 315.

B. Wisconsin Stat. § 893.55(7)

¶ 104 Wisconsin Stat. § 893.55(7) states:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

The interpretation of § 893.55(7) begins with the plain meaning of the words chosen by the legislature. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58,

¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Context, scope and purpose are relevant in ascertaining the plain meaning of a statute. *Id.*, ¶¶ 46, 48. Accordingly, statutory language is not interpreted in isolation, but as a part of a whole statutory scheme that may address a particular topic, giving proper accord to closely-related statutes. *Id.*, ¶ 46. It is also to be interpreted reasonably, "to avoid absurd or unreasonable results." *Id.* (citations omitted). If the statute is plain on its face, it is simply applied. *Id.* However, if the statute is ambiguous, we may examine extrinsic sources, such as legislative history, to aid in construction. *Id.*, ¶ 50. Statutes may be ambiguous through the legislature's use of imprecise terms, *See Landis v. Physicians Ins. Co. of Wis.*, 2001 WI 86, ¶ 26, 245 Wis. 2d 1, 628 N.W.2d 893, or through the statute's interaction with other statutes, *State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980). In either case, the statute is ambiguous because it is capable of being understood by reasonably well-informed persons in two or more ways. *Kalal*, 271 Wis. 2d 633, ¶ 47. When a statute is ambiguous, the legislature is presumed to intend the interpretation that advances the purpose of the statute. *Sonnenburg v. Grohskopf*, 144 Wis. 2d 62, 65, 422 N.W.2d 925 (Ct. App. 1988).

¶ 105. Here, both parties agree that Wis. Stat. § 893.55(7) is ambiguous, although they differ in regard to what its meaning should be. The majority opinion concludes the statute provides for the admission of evidence of payments by others and write-offs of health care charges that otherwise would be inadmissible under our holding in *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201. Majority op., ¶ 70. But once admitted, the majority opinion holds that this evidence cannot be used as a subtraction from the

damages to be awarded a successful plaintiff because to do so would abrogate the collateral source rule. Majority op., ¶ 76. In my view, that second conclusion is not reasonable. As I explain below, it cuts against the legislative purpose behind the enactment of § 893.55(7), that of reducing the size of damage awards in medical malpractice actions through the abrogation of the collateral source rule when doing so will prevent windfalls or double recoveries by the plaintiff.

¶ 106. In 1975, the legislature first responded to what it perceived as a crisis in the provision of health care by creating ch. 655. It saw the rapid rise in medical malpractice suits as part of the problem, and it began to address that concern by creating a number of procedures that were required in medical malpractice actions. *Aicher v. Wisconsin Patients Comp. Fund,* 2000 WI 98, ¶ 22, 237 Wis. 2d 99, 613 N.W.2d 849. In subsequent years, the legislature maintained its concern with the continuing rise in health care costs, and again it focused on medical malpractice actions by attempting to limit the size of malpractice awards. *See Maurin v. Hall,* 2004 WI 100, ¶¶ 48–62, 274 Wis. 2d 28, 682 N.W.2d 866. It did so, in part, to reduce the cost of malpractice insurance, which is born by all consumers of health care services. *Id.,* ¶¶ 48, 65.

¶ 107. In 1995, as a further development of the legislature's comprehensive scheme to reduce health care costs, 1995 Wis. Act 10 was passed. It revised parts of ch. 655. 1995 Wis. Act 10, §§ 3–7. Section 3 of Act 10 shows that the legislature continued to be concerned about the premiums that health care providers pay for health care liability insurance. 1995 Wis. Act 10 also created Wis. Stat. § 893.55(7). 1995 Wis. Act 10, § 12m. Accordingly, § 893.55(7) must be read in the context of a comprehensive legislative scheme to reduce health

care costs through containment of the size of awards in medical malpractice cases. *See Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 108. A drafting request for an amendment to the original proposal for Wis. Stat. § 893.55(7) from Senator Joanne Huelsman shows that § 893.55(7), as finally enacted, was created to modify the collateral source rule and to permit evidence of other sources of payment to be presented to the fact-finders in medical malpractice actions. *See* Legislative Reference Bureau Drafting File for 1995 Wis. Act 10. That amendment of § 893.55(7) did not require an offset or a reduction of the award by the amount of other payments. Rather, the Legislative Reference Bureau's file shows that presenting information to facilitate a reduction, while not requiring a reduction in each case, was done in order to preserve the interests of parties to the action that had subrogated rights. *See id.* The Legislative Reference Bureau Drafting File for 1995 Wis. Act 10 also shows that states that have enacted similar modifications of the collateral source rule have experienced a reduction in the size of medical malpractice verdicts by reducing the possibility of windfalls to plaintiffs. *See id.*

¶ 109. Accordingly, I interpret Wis. Stat. § 893.55(7) as permitting a reduction of damages awarded to a successful plaintiff in a medical malpractice action by amounts that a plaintiff has incurred, but has not paid, for health care services. In order to accomplish the legislative purpose for which § 893.55(7) was enacted, a reduction should occur when write-offs have occurred or when third-party payers with rights of reimbursement or subrogation were not joined in the action. This is fair to plaintiffs who will be made whole, and it is fair to defendants who will not be required to give windfalls or double recoveries to plaintiffs. How-

ever, when third parties with subrogated rights or rights of direct action due to their payment of the injured party's medical expenses are joined in the lawsuit and their rights are adjudicated in that lawsuit, a reduction in the amount the tortfeasor is found to owe for what those parties paid would not be appropriate. Stated otherwise, when the parties who paid medical expenses claim for repayment in the lawsuit, the award of damages will include compensation for those parties, as well as for the injured party.

¶ 110. In the case before us, Lagerstrom paid only $755 for medical services, yet Lagerstrom sought $89,375.78 from the jury. Medicare paid $64,759.40 and received provider write-offs of $23,861.38 for a total participation of $88,620.78 as payment for Lagerstrom's health care services. Lagerstrom was made whole by the jury's verdict because everything Lagerstrom paid was repaid by the damages that were awarded. Yet, Lagerstrom appeals. Lagerstrom seeks all that Medicare paid and all that the health care providers wrote off of their bills, the latter of which no one will ever have to pay. In support of that position, Lagerstrom asserts that he should get a windfall under the collateral source rule in regard to the amounts that were written off and that he has potential liability to Medicare for the payments that Medicare made. I disagree with both contentions.

¶ 111. In regard to the first contention, that Lagerstrom is legally entitled to a windfall for the amounts that health care providers wrote off, the statute cannot be so interpreted. While the collateral source rule may permit a windfall to a plaintiff when the claim is not based on medical malpractice, *See Koffman,* 246 Wis. 2d 31, ¶ 27, the purpose of Wis. Stat. § 893.55(7) was to modify the collateral source rule in

medical malpractice actions. Accordingly, Lagerstrom is due only so much in reimbursement for health care expenses as Lagerstrom paid. That is sufficient to make Lagerstrom whole. *Id.,* ¶ 69 (Sykes, J., dissenting). In my view, § 893.55(7) cannot be interpreted to permit recoveries of amounts written off of bills for health care services in medical malpractice actions and be consistent with the legislative policy choice underlying § 893.55(7).

¶ 112. In regard to the second contention, that Lagerstrom should recover the $64,759.40 that Medicare paid, I again disagree. Lagerstrom purposefully refused to name the United States government as a party, either as a defendant or as an involuntary plaintiff, pursuant to Wis. Stat. § 803.03.[3] Accordingly, as I explain below, the judgment in this case does not affect any claim the United States government has by virtue of the Medicare payments that were made.

¶ 113. When Medicare participates in the payment of health care services, at times it does so as a secondary payer by making "conditional" payments. 42 U.S.C. § 1395y(b)(2)(B)(i). One of the occasions when Medicare is a secondary payer and its payments are "conditional" is when there is a liability insurance policy or plan that may be responsible for paying for the services. 42 CFR § 411.21. If a Medicare conditional payment is made, the Center for Medicare & Medicaid

---

[3] The record reflects that on July 30, 2001, the United States government gave notice to Lagerstrom's attorney that "Medicare's regulations require that your client pay Medicare back within 60 days of your receipt of settlement or insurance proceeds." Medicare had then paid $64,759.40. The record also reflects that the defendants attempted to get Lagerstrom to name the United States as a necessary party pursuant to Wis. Stat. § 803.03, but Lagerstrom resisted and prevailed. The jury verdict dated February 2003 did not adjudicate the interests of the United States.

56

Services (CMS), an arm of Health Care Financing Administration (HCFA), may seek recovery of those conditional payments. 42 CFR § 411.24. CMS can recover conditional payments from parties who have "received a third party payment." Section 411.24(g). This includes a beneficiary, such as Vance Lagerstrom. *Id.* If a "party receives a third party payment," that party must reimburse Medicare within 60 days. Section 411.24(h). The payment due Medicare may be reduced by the costs of collection. 42 CFR § 411.37(a).

¶ 114. "In the case of liability insurance settlements . . . [i]f Medicare is not reimbursed as required by paragraph (h) of this section [411.24], the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 CFR § 411.24(i)(1). In liability insurance settlements where a lump sum, which does not allocate among the types of damages included, is received, the beneficiary/recipient of the settlement may be subject to claims by CMS that it has received a third-party payment to which Medicare is entitled. *See Zinman v. Shalala,* 67 F.3d 841, 843 (9th Cir. 1995); *Denekas v. Shalala,* 943 F. Supp. 1073, 1075 (S.D. Iowa 1996); *Smith v. Travelers Indem. Co.,* 763 F. Supp. 554, 558 (M.D. Fla. 1989). However, this case does not present a settlement by a liability insurance company, nor has Lagerstrom received a lump sum, undifferentiated payment. Furthermore, Lagerstrom has not received any third-party payment for sums paid by Medicare. However, the United States government does retain the right to pursue recovery of conditional payments it made by direct action against all who were required or responsible to make payment with respect to the same item or service. 42 U.S.C. § 1395y(b)(2)(B)(iii). Accordingly, a lawsuit by the United States government against the

tortfeasor's insurer has not been precluded by this lawsuit. However, there is no basis for a claim against Lagerstrom under the jury's clearly itemized verdict.

¶ 115. The majority opinion criticizes the circuit court's jury instruction and concludes it prevented the real controversy from being fully tried. Majority op., ¶ 85. Lagerstrom requested a jury instruction that said, "Vance Lagerstrom is obligated to reimburse Medicare for expenditures made by it." The majority opinion asserts that by refusing to give this instruction, Lagerstrom was prevented from advising the jury of the estate's "potential" obligation to reimburse Medicare. Majority op., ¶¶ 79–89. However, the instruction Lagerstrom requested did not say "potential" liability.

¶ 116. Further, as the tortfeasor's insurer argued, the insurer has "potential" liability to Medicare. 42 CFR § 411.24(h)-(i). Since Lagerstrom refused to name the United States government as a party to the action, both the plaintiff and the defendants were treated similarly in regard to the arguments each could make to the jury. That is, Lagerstrom could argue to the jury that if it included in the damages amounts that Medicare paid, it would repay those amounts to the United States government, and the insurer could argue that amounts paid by Medicare should not be included in the verdict because it remained obligated to Medicare for those same amounts. Therefore, I agree that the circuit court properly instructed the jury.

¶ 117. In my view, it would have been contrary to law to give the instruction Lagerstrom requested because Medicare was not a party to the action. Instead, the instruction given followed the purpose set out by the legislature in enacting Wis. Stat. § 893.55(7). The reduction the jury made prevented a windfall to Lagerstrom, and it prevented a double recovery that could have

occurred because Lagerstrom refused to name the United States government as a party and thereby adjudicate its interests. Accordingly, a new trial is not appropriate. Lagerstrom was made whole by the jury's verdict. That the United States government still may have a right of action for the Medicare payments it made, is not unfair to Lagerstrom. Lagerstrom is left with the choice he made, as are the defendants who may be required to deal with CMS about what is yet due to Medicare.

¶ 118. Therefore, for the reasons set out above, I would affirm the judgment of the circuit court, as modified, to include $7,610.10 for funeral expenses.

¶ 119. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.

¶ 120. I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this concurrence and dissent.

¶ 121. JON P. WILCOX, J. (dissenting). I wholeheartedly join Justice Prosser's well-reasoned dissent. I write separately only to indicate that the majority opinion represents yet another instance of this court undermining the intent of the legislature by rendering void a properly enacted statute through creative judicial interpretation. Although the majority has not declared the statute at issue unconstitutional, the effect of the majority opinion is just the same.

¶ 122. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK, joins this opinion.

¶ 123. DAVID T. PROSSER, J. (dissenting). The plaintiff-appellant challenges the constitutionality of Wis. Stat. § 893.55(7). She also claims that the admission of "prejudicial evidence of collateral source payments so that [she] was awarded only her out-of-pocket medical expenses instead of the reasonable value of the

medical expenses incurred" entitles her to a new trial as to medical expense damages. The majority opinion reformulates the issues, and then eviscerates a key component of the medical malpractice statute. Because the court's decision countermands legitimate legislative action, I respectfully dissent.

I

¶ 124. The collateral source rule provides that damages awarded to an injured person are not to be affected by the fact that the claimant received compensation from other sources, such as sick leave or insurance. *Payne v. Bilco Co.*, 54 Wis. 2d 424, 433, 195 N.W.2d 641 (1972). This rule in tort cases has been part of Wisconsin common law since at least 1908. *Gatzweiler v. Milwaukee Elec. Ry. & Light Co.*, 136 Wis. 34, 116 N.W. 633 (1908).

¶ 125. The rule was explained in *Campbell v. Sutliff*, 193 Wis. 370, 373–74, 214 N.W. 374 (1927) (*overruled on other grounds by Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 92, 102 N.W.2d 393 (1960)), where the defendant contended that the trial court erred by instructing the jury, in assessing the amount of the plaintiff's damages, to "wholly disregard" the fact that the injured plaintiff had received money from an accident insurance policy and had continued to receive his salary while he was injured. The defendant argued that the plaintiff's damages should be measured "by the loss in wages or earnings he actually sustained" and that there were no lost earnings when his employer continued to pay the plaintiff throughout his disability. *Id.* at 374. The court rejected this contention, observing that "the prevailing doctrine in this country" was otherwise. *Id.* (citing *Cunnien v. Superior Iron Works Co.*, 175 Wis. 172, 188, 184 N.W. 767 (1921)). It added:

> We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments made by the employer, it should be the person who has been injured, not the one whose wrongful acts caused the injury.

*Id.*

¶ 126. Early cases discussing the collateral source rule addressed whether insurance payments or continued wages should reduce an injured plaintiff's damages. Eventually the court considered medical expenses. *See McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 31 Wis. 2d 378, 395–96, 143 N.W.2d 32 (1966); *Merz v. Old Republic Ins. Co.*, 53 Wis. 2d 47, 53–54, 191 N.W.2d 876 (1971); *Rixmann v. Somerset Pub. Schs.*, 83 Wis. 2d 571, 575–83, 266 N.W.2d 326 (1978) (collecting cases).

¶ 127. In *Thoreson v. Milwaukee & Suburban Transport Corp.*, 56 Wis. 2d 231, 241–45, 201 N.W.2d 745 (1972), the court discussed medical expenses at length:

> The general rule in Wisconsin has been that a plaintiff who has been injured by the tortious conduct of another is entitled to recover the reasonable value of his medical costs reasonably required by the injury. In most cases this is the actual expense, but in some cases it is not. But the test is the reasonable value, not the actual charge . . . . [T]he fact that necessary medical and nursing services are rendered gratuitously . . . should not preclude the injured party from recovering the value of those services as part of his compensatory damages.

61

*Id.* at 243. "We hold the collateral-source rule is not limited to paid-for benefits but applies to gratuitous medical services provided or paid for by the state." *Id.* at 245 (citing 22 Am. Jur. 2d *Damages* § 207, at 288 (1959); R.P. Davis, Annotation, *Hospital and Medical Services Furnished to Injured Person By Government as Affecting Damages Recoverable For Personal Injury or Death,* 68 A.L.R. 2d 876 (1959); *Dahlin v. Kron,* 45 N.W. 2d 833 (Minn. 1950)).

¶ 128. This principle was affirmed and extended in *Ellsworth v. Schelbrock,* 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764, a case involving Medical Assistance payments to a woman injured in an automobile accident, and *Koffman v. Leichtfuss,* 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201, another motor vehicle accident case in which the court drew a distinction between the subrogation interest in medical expense claims and the reasonable value of medical services rendered.

¶ 129. In both *Ellsworth* and *Koffman,* Justice Diane Sykes dissented, arguing that the real question was not whether the collateral source rule applied but which measure of damages it applied to. *Ellsworth,* 235 Wis. 2d 678, ¶ 26 (Sykes, J., dissenting); *Koffman,* 246 Wis. 2d 31, ¶¶ 67–74 (Sykes, J., dissenting). In *Ellsworth,* for example, the plaintiff put in expert testimony regarding the full retail value of the medical services she had received, which added up to $597,448.27. The amount actually paid by Medical Assistance was $354,941.21, an amount accepted by the medical providers as payment in full. *Ellsworth,* 235 Wis. 2d 678, ¶ 26. Thus, "[t]he difference—almost $250,000—was absorbed by the providers as legally unrecoverable." *Id.*

¶ 130. The *Ellsworth* majority held that the plaintiff was entitled to recover the higher amount, while the

dissent concluded that the extra $250,000 reflected "what the highest payor would have paid for the same medical services," *id.*, ¶ 31, and thus yielded an unjustified windfall for the plaintiff.

¶ 131. From the outset, the collateral source rule recognized the unfairness in relieving a tortfeasor from full liability for injuries the tortfeasor caused simply because the injured party had the foresight to purchase or bargain for insurance or other benefits, or because the injured party received other "compensation" from a collateral source. Over the years, however, the collateral source rule has tended to inflate jury verdicts and lead to double recovery for plaintiffs. The rule sometimes provides an extra source of economic damages, and this may be significant when noneconomic damages have been capped by legislation. Indeed, some litigants have used the rule as a means to get around the cap on noneconomic damages. Using this strategy, double recovery is not an occasional byproduct of the rule; it is the desired objective. Inconsistent appellate decisions reflect judicial ambivalence about this turn of events. *Compare Lambert v. Wrensch,* 135 Wis. 2d 105, 399 N.W.2d 369 (1987), *with Koffman.*

¶ 132. Whatever the merits of the collateral source rule in the court's past cases, the case at hand presents new issues. Unlike past cases, this case involves medical malpractice, which is governed by a unique set of statutes. In 1995 the legislature created Wis. Stat. § 893.55(7), which modifies the collateral source rule in medical malpractice cases. Thus, the principal issue is how the modified rule affects medical expenses in medical malpractice cases. A second issue is whether the measure of compensatory medical damages in a medical malpractice case includes the reasonable

value of medical costs already absorbed by the tortfeasor. A third issue concerns the specific reimbursement rights of Medicare.

## II

¶ 133. Medical malpractice cases are governed by Wis. Stat. ch. 655 (*see* Wis. Stat. § 655.005(1)(a)), as well as Wis. Stat. § 893.55 and a few other statutes like Wis. Stat. §§ 895.04 and 895.045. Chapter 655 and Wis. Stat. §§ 893.55(5) and (7) have bearing on this case.

A. Wisconsin Stat. § 655.009(2)

¶ 134. Chapter 655 was enacted in 1975. *See* ch. 37, Laws of 1975. Wisconsin Stat. § 655.009(2) was part of this original legislation and has not been changed. Entitled "Medical expense payments," it reads: "The court or jury, whichever is applicable, shall determine the amounts of medical expense *payments* previously incurred and for future medical expense *payments.*" Wis. Stat. § 655.009(2) (emphasis added). Because this subsection became law more than two years after this court's 1972 decision in *Thoreson,* the legislature is deemed to be familiar with the collateral source rule and its application to medical expenses as described in *Thoreson.*

¶ 135. Subsection (2) does not speak to medical expense payments incurred "by a patient." Thus, it cannot be said to attack the collateral source rule head on. Nonetheless, the subsection speaks of "payments," both in the past and in the future, and this statutory term makes it different from the passage in *Thoreson* that "the test is the reasonable value, not the actual charge, and therefore there need be no actual charge." *Thoreson,* 56 Wis. 2d at 243. Logically, "medical expense

*payments* incurred" are not the same as "the reasonable value of medical costs," whether one looks back to the past or forward to the future.

B. Wisconsin Stat. § 893.55(5)

¶ 136. In 1986 the legislature amended Wis. Stat. § 893.55 to create subsection (5). 1985 Wis. Act 340, § 72b. This subsection reads:

> (5) *Every award of damages under ch. 655 shall specify the sum of money, if any, awarded for each of the following* for each claimant for the period from the date of the injury to the date of the award and for the period after the date of the award, without regard to the limit under sub. (4)(d):
>
> . . . .
>
> (d) *Each element of medical expenses.*

Wis. Stat. § 893.55(5) (emphasis added).

¶ 137. Economic damages, such as medical expenses, are not subject to the limit on noneconomic damages in Wis. Stat. § 893.55(4)(d). Thus, the purpose of subsection (5) is to require the jury to make specific factual findings with respect to the elements of economic damages in medical malpractice cases. Before enactment of this provision, courts had the latitude to submit special verdicts that combined elements of damages.[1] Subsection (5) ended this practice in medical

---

[1] Wis JI—Civil 1750A (1982) included the following comment:

It has long been established that the trial court has absolute discretion as to the formulation of a special verdict. Traditionally, there has been a great diversity of practice in the trial courts as to how the damage question in the special verdict is framed. *Some*

malpractice cases. Subsection (5) must be read in tandem with Wis. Stat. § 655.009(2) because subsection (5) refers to every award of damages under Chapter 655.

C. Wisconsin Stat. § 893.55(7)

¶ 138. In 1995 the legislature specifically addressed the collateral source rule in medical malpractice cases. 1995 Wis. Act 10, § 12m. The Act created Wis. Stat. § 893.55(7), which reads:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

¶ 139. Subsection (7) modifies the collateral source rule by allowing evidence of other compensation to be presented to the jury in a medical malpractice action. It does not *require* an offset or a reduction of a malpractice award by the amount of any other payments, but it *permits* the jury to make such a reduction after considering evidence of other compensation. Admitting this information into evidence negates the principle that the jury should "wholly disregard" the

---

*courts combine all damage elements in a single question;* others combine pain and suffering and disability, future medical and loss of future earning capacity into a single question inquiry about plaintiff's personal injury while submitting separate questions as to past medical expense and past wage loss which are often answered by the court. (Emphasis added.)

Future medical expenses were often combined with other elements even when past medical expenses were listed separately.

fact of other compensation. A legislative document describing 1995 Engrossed Bill 36, the source of 1995 Wis. Act 10, explains:

> There are two main reasons for *this* modification of the collateral source rule. First, economists who have studied the effects of various tort reforms have concluded that collateral source rule modification yields substantial savings in the long run, second only to caps on damages in terms of effect on overall costs. Second, fairness is enhanced by reducing the likelihood of double recoveries and *allowing juries to take other compensation into account in determining the amount of an award.*

*Proposed Amendment to Engrossed Assembly Bill 36: Admissibility of Evidence of Other Compensation,* in Drafting Records, 1995 Assembly Bill 36 (available at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin) (emphasis added). The purpose of the modification could not be stated more plainly.

¶ 140. Subsection (7) is different from Wis. Stat. § 655.009(2) and Wis. Stat. § 893.55(5) because, by its terms, it is not limited to evidence of payments for medical expenses. It is broad enough to cover all kinds of compensation from collateral sources for medical malpractice. Some of this compensation will have no right of subrogation or reimbursement, which indicates that the patient *would* receive double recovery under the collateral source rule in the absence of the statutory modification.

¶ 141. If the three provisions discussed above were combined into a single statute for purposes of this case, it might read as follows:

> (1) The court or jury shall determine the amounts of medical expense payments previously incurred. [Wis. Stat. § 655.009(2)]

(2) Evidence of any compensation [for medical expenses] received from sources other than the defendant is admissible in [determining] damages. [Wis. Stat. § 893.55(7)]

(3) Every award of damages shall specify the sum of money, if any, awarded for each element of medical expenses. [Wis. Stat. § 893.55(5)]

(4) This section does not limit the substantive or procedural rights of persons who have claims based on subrogation. [Wis. Stat. § 893.55(7)]

Each of the principles stated above must be applied in medical malpractice cases to comply with statutory directives.

### III

¶ 142. The majority opinion acknowledges that the collateral source rule has been modified. Majority op., ¶ 48. But it jumps to the conclusion that "the modification of the collateral source rule is a modification of the rules of evidence to allow evidence of the other payments; the modification is not an explicit modification of the substantive collateral source rule that a collateral source payment does not reduce an award of medical expenses." *Id.* The opinion goes on to hold that "the circuit court must instruct the fact-finder that it must not reduce the reasonable value of medical services on the basis of the collateral source payments." *Id.*, ¶¶ 5, 74.

¶ 143. These startling conclusions render Wis. Stat. § 893.55(7) a nullity. Moreover, they appear to lock in an inflated value of medical services, even when some or all of these services have been absorbed already by

the tortfeasor. The latter proposition is completely contrary to conventional views of the collateral source rule.

¶ 144. The majority's mistaken conclusions are built on a series of false premises, derived from examination of (A) the text of the statute; (B) the legislative history of the statute; (C) the alleged legislative goal in adopting Wis. Stat. § 893.55(7), and three concepts of law allegedly "embodied in the statute, namely, (D) the valuation of medical services; (E) the collateral source rule; and (F) subrogation." *Id.*, ¶ 26. It should be noted at once that the majority's methodology is an unprecedented departure from orthodox statutory interpretation.

¶ 145. First, the majority examines the text of Wis. Stat. § 893.55(7), which reads:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

It correctly notes that subsection (7) encompasses all damages in a medical malpractice action and makes evidence of all collateral source payments admissible in regard to all damage claims. *Id.*, ¶ 28. The opinion then asserts: "Although the statute speaks of compensation to the claimant, the instant case demonstrates that the statute also encompasses payments, *write-offs, or forgiveness* made directly to health care providers rather than to the claimant." *Id.*, ¶ 29 (emphasis added). This circular assertion is plainly a non sequitur.

¶ 146. "Compensation" in this subsection may contemplate the reasonable value of medical services received by a patient, but this does not mean that the

reasonable value of medical services is necessarily to be measured by what the *highest* payor would have to pay for the same medical service. *See Ellsworth,* 235 Wis. 2d 678, ¶ 31 (Sykes, J., dissenting). In this subsection, "compensation" is a statutory term, not a common law concept, and it must be construed in a manner consistent with its legislative context and purpose. Subsection (7) was enacted *before* the court's decisions in *Ellsworth* and *Koffman.* It is not possible to square the legislative objectives of containing costs and minimizing double recovery with the court's interpretation of the term "compensation," especially when we factor in Wis. Stat. § 655.009(2).

¶ 147. The majority opinion also argues that "the text of the statute raises more questions than it answers." Majority op., ¶ 35. This contention, designed to open the door to statutory interpretation, sums up four paragraphs, ¶¶ 32–35, in which the majority poses questions that the statute does not address. Posing questions that will be answered by the circuit court or jury on a case-by-case basis is nothing more than a ploy to create ambiguity in the statute to justify statutory construction.

¶ 148. Second, the majority looks at legislative history and notes that an early draft of 1995 Assembly Bill 36 contained the sentence: "The award of damages under ch. 655 shall be reduced by any compensation that the injured party received from sources other than the defendant to compensate him or her for the injury." Majority op., ¶ 38. This sentence is deleted from the final draft.

¶ 149. 1995 Assembly Bill 36 had a Legislative Reference Bureau number of LRB 1913/3. This means that the bill introduced was the third draft of the 1913th bill requested. The deleted sentence was found in the

first draft of the bill, and it was removed by the authors in the second draft before the third draft was introduced as the bill.

¶ 150. There is a perfectly reasonable explanation for deletion of the sentence from the first draft. The authors of the bill opted to permit juries to weigh the facts and then decide whether to reduce damage awards by all or part of the amount of collateral source payments, which is the practice in Delaware.[2] The revised draft "does not require an offset or a reduction of any malpractice award by the amount of any other payments. . . . [The evidence] *allow*[s] juries to take other compensation into account in determining the amount of an award." *Proposed Amendment to Engrossed Assembly Bill 36: Admissibility of Evidence of Other Compensation,* in Drafting Records, 1995 Assembly Bill

---

[2] *See* Del. Code Ann. tit. 18, § 6862 (2003). The Delaware statute was cited in 2 The A.L.I. Reporters' Study: Enterprise Responsibility For Personal Injury, Approaches to Legal and Institutional Change (1991), the very document cited by the Legislative Council in its analysis of 1995 Engrossed Bill 36.

The Delaware Statute is strikingly similar to Wis. Stat. § 893.55(7). Delaware Code Ann. tit. 18, § 6862 provides:

> In any medical negligence action for damages because of property damage or bodily injury, including death resulting therefrom, there may be introduced, and if introduced, the trier of facts shall consider evidence of: (1) Any and all facts available as to any public collateral source of compensation or benefits payable to the person seeking such damages (including all sums which will probably be paid payable to such person in the future) on account of such property damage or bodily injury . . . .

The Delaware courts had no difficulty understanding that "The purpose of this statute is to prevent the collection of a loss from a collateral public source (such as Social Security) and then the collection for the same loss from the party or hospital being sued." *Nanticoke Memorial Hosp., Inc. v. Uhde,* 498 A.2d 1071, 1075 (Del. 1985).

36 (available at the Wisconsin Legislative Reference Bureau, Madison, Wisconsin) (emphasis added). This flexibility anticipates juries balancing the equities in widely varying fact situations, and taking into account special circumstances like Medicare reimbursement.

¶ 151. The Delaware approach, followed by Wis. Stat. § 893.55(7), has also been adopted in such other states as Alabama,[3] Arizona,[4] and California.[5]

---

[3] Ala. Code § 12–21–45 (2001). *See Marsh v. Green,* 782 So.2d 223 (Ala. 2000).

[4] Ariz. Rev. Stat. § 12–565 (2005); *see also Eastin v. Broomfield,* 570 P.2d 744, 752–53 (Ariz. 1977) (disagreed with on other grounds by *Shotwell v. Donahoe,* 85 P.3d 1045, 1049 (Ariz. 2004)).

[5] Cal. Civ. Code § 3333.1 (2005). California Civil Code § 3333.1 (2005) provides in part:

> [T]he defendant . . . in an action for personal injury against a health care provider based upon professional negligence . . . may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . .

The California Supreme Court has determined that "the [California] Legislature's assumption was that the trier of fact would take the plaintiff's receipt of such benefits into account by reducing damages," and that the statute is constitutional. *Barme v. Wood,* 37 Cal. 3d 174, 179–82 (1984). Both the *Barme* court and later California appellate panels were careful to note that although the original draft of the California statute *required* the trier of fact to reduce the plaintiff's damages, the enacted statute "simply provides for the admission of evidence of such benefits, apparently leaving to the trier of fact the decision as to how such evidence should affect the assessment of

¶ 152. The majority opinion attempts to link the deletion of the sentence from the first draft of the bill and the later addition of a sentence by legislative amendment. The latter can be explained by a memorandum in the Legislative Council files. On January 20, 1995, representatives of Employers Health Insurance faxed a memorandum to Representative Sheryl Albers, who was then Chair of the Assembly Committee on Insurance, Securities and Corporate Policy. The memorandum read in part:

> After discussions with the author and staff counsel, we reviewed the language again and consulted with our attorneys. Although the language itself does not pose the problem since the collateral source rule and those who have subrogation rights function independently, we continue to have concerns about future interpretations based on a creative application of the "made whole" doctrine.

Memorandum dated January 20, 1995, in Bill File for 1995 Assembly Bill 36 (available at Wisconsin Legislative Council, Madison, Wisconsin).

¶ 153. The Employers Health memorandum then proposed adding: "This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation." *Id.* This is precisely the language later added by a Senate amendment. In short, the legislative history of Wis. Stat. § 893.55(7) does not establish a link between the deletion of one sentence and the addition of another.

¶ 154. The majority complains that the legislative history does not make clear how the admissibility of collateral source payments to a plaintiff "impacts our

damages." *Id.* at 179 n.5; *see also Hernandez v. California Hosp. Med. Ctr.,* 93 Cal. Rptr. 2d 97, 102 (Ct. App. 2000).

case law defining 'reasonable value of medical services' as the reasonable value of medical services rendered, without limitation to amounts paid, or how that modification affects the collateral source rule and subrogation." Majority op., ¶ 47. I believe it does. The statute permits the jury to consider collateral source payments in a medical malpractice case in determining damages. Subsection (7) preserves the substantive and procedural rights of persons who have claims based on subrogation. Those rights are established outside the statute. Persons who have claims based on subrogation or reimbursement must assert their claims at an appropriate time in an appropriate manner, neither of which is limited by subsection (7). The court is then required to respond in a way that both accurately informs the jury and protects subrogation rights.

¶ 155. The majority declares that the legislature was "well aware" of the American Law Institute Reporters' Study recommending "mandatory reduction of a plaintiff's tort award 'by the amount of present and estimated future payments from all sources of collateral benefits except life insurance.'" Majority op., ¶ 44. It states that the legislature "deliberately did not adopt the Study's proposed approach." *Id.* The truth is, the Reporters' Study recommended "virtually complete reversal of the collateral source rule wherever such an approach is feasible," in tandem with "a bar to any subrogation or reimbursement rights exercised by loss insurers against the tort award." 2 The A.L.I. Reporters' Study: *Enterprise Responsibility for Personal Injury,* Approaches to Legal and Institutional Change at 182 (1991). The American Law Institute never adopted the Reporters' Study, and obviously the legislature took steps to preserve subrogation rights.

¶ 156. Third, the majority takes up legislative goals and declares that the "legislative goals are not explicitly set forth in the statute." Majority op., ¶ 49. This is not a surprise. Legislative goals are often not stated in the text of a statute. A court's job is to discern legislative goals from intrinsic sources, if possible, and extrinsic sources, if necessary. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶¶ 44–51, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 157. The majority accurately states two of the legislature's goals, namely, (1) to provide fact-finders with information about the collateral source payments in the hope that patients will not obtain double recovery; and (2) ultimately, to reduce health care providers' insurance premiums. The obvious goal *not* stated by the majority is to allow juries to take other compensation into account in determining the amount of damage awards. This goal is not acknowledged even though it is explicitly stated in the legislative history. *See* majority op., ¶ 42 n.16.

¶ 158. Fourth, having stated at least some of the legislative goals, the majority sets out to undermine them. It begins with a discussion of "the valuation of reasonable medical expenses." Majority op., ¶¶ 50–51. The majority writes: "In calculating damages, a person injured by medical malpractice may recover the reasonable value of the medical services reasonably required by the injury." *Id.,* ¶ 52 (citing *Thoreson,* 56 Wis. 2d at 243).

¶ 159. There are two serious problems with this statement. First, *Thoreson* predates Chapter 655, predates Wis. Stat. § 893.55(5), and predates Wis. Stat. § 893.55(7). Second, *Thoreson* is not a medical malpractice case. Hence, to make the statement above, the majority has to determine that *three* focused statutes, including a statute that the majority admits modifies the collateral source rule, have no effect on the sub-

stance of the collateral source rule with respect to medical expenses in a medical malpractice case.

¶ 160. The majority dismisses Wis. Stat. § 655.009(2), saying it does not change "the long-standing rule that the 'reasonable value of medical services' is the reasonable value of medical services rendered, without limitation to amounts paid." Majority op., ¶ 54. This is not correct. The majority does not point to any authority to substantiate its conclusion that the reasonable value of medical services has no relationship to *actual payments where actual payments have been made* in the medical malpractice context. Clearly, *Ellsworth* and *Koffman* have not been the law for the last three decades, nor have they been applied in this manner in medical malpractice cases

¶ 161. Contrary to the majority opinion, there is substantial evidence that damages for past medical and hospital expenses have been tightly controlled over the years by Wisconsin judges, in keeping with § 655.009(2) ("the amounts of medical expense payments previously incurred"). For instance, Wis JI—Civil 1750A ("Personal Injury: One Subdivided Question as to Past and Future Damages" (1990)) instructs as to "Past Medical and Hospital Expenses" in Subdivision 1:

> Question ___ inquires as to what sum of money will fairly and reasonably compensate the plaintiff for the damages sustained by him from the date of accident to the date of trial, which were the result of such accident, with respect to medical and hospital expenses.
>
> In your answer to question ___, you will fix upon *such a sum of money as you find has been reasonably and necessarily incurred by the plaintiff for the hospital and medical care required* for the treatment of his personal injuries. This amount may not be limited to doctor bills and hospital bills. The plaintiff is entitled to recover, as a part of these expenses, such an amount as

> *will reasonably compensate him for costs of transporta-*
> *tion, including ambulance service, from his home to the*
> *places of treatment and return and also for such*
> *amounts as were reasonably paid or incurred by him for*
> *nursing services and for drugs and medications.*

Wis JI—Civil 1750A (emphasis added).

¶ 162. This old instruction, which was in use more than 20 years after the *Thoreson* decision, cross-referenced former Wis JI—Civil 1765 ("Personal Injury: Past Medical and Hospital Expenses" (1990)). The comment to the latter instruction cites two post-*Thoreson* cases: *Green v. Rosenow,* 63 Wis. 2d 463, 217 N.W.2d 388 (1974), and *Fouse v. Persons,* 80 Wis. 2d 390, 259 N.W.2d 92 (1977). In *Green,* the court said: "Where a medical bill may relate to two separate maladies, one having nothing to do with the plaintiff's claim, plaintiff must prove which *charges* relate to the injury caused by the defendant." *Green,* 63 Wis. 2d at 474 (emphasis added). In *Fouse,* the court supported medical and hospital expenses that doctors testified "were reasonable and *necessary." Fouse,* 80 Wis. 2d at 396–97 (emphasis added).

¶ 163. In other words, notwithstanding the *Thoreson* decision, the reasonable value of medical services has not been measured consistently as the *highest* reasonable cost for those services, *particularly in medical malpractice cases.* The "highest value" approach is a recent phenomenon. Government health programs such as Medicare and Medical Assistance are not the only health care payors who now secure medical services at a discount. Indeed, discounted payments may be the norm.

¶ 164. Even if Wis. Stat. § 655.009(2) and Wis. Stat. § 893.55(7) were to be interpreted as requiring the full, undiscounted value of medical services, this does not negate the admitted modification of the collateral source rule in § 893.55(7) for medical malpractice cases.

77

¶ 165. The majority's discussion of the collateral source rule in ¶¶ 56–63 is an unpersuasive denial of the fact that the legislature has acted to modify the rule. For instance, the discussion of the policy basis for the collateral source rule in ¶¶ 57–58 is beside the point, inasmuch as the legislature had a different policy objective in mind: containing the liability costs of health care providers by discouraging double recovery.

¶ 166. A medical malpractice case may be factually different from other cases. To illustrate, if a person receives treatment from a physician, the physician will bill someone for services, even if those services were negligent. If the physician receives discounted payment, then this "tortfeasor" will absorb the difference between the so-called "full" value and the payment actually made. If a "tortfeasor" is held accountable for the full value of medical services *and* is required to reimburse actual payments received from a third party, then there will be double liability as well as partial double recovery. *The majority cannot show authority for the proposition that double liability for tortfeasors is a component of the collateral source rule.*

¶ 167. This brings us to subrogation. Subrogation has been defined as the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Ruckel v. Gassner,* 2002 WI 67, ¶ 14, 253 Wis. 2d 280, 646 N.W.2d 11 (quoting *Black's Law Dictionary* 1440 (7th ed. 1999)). Subrogation rights are often embodied in contracts, such as insurance policies. Sometimes subrogation is protected by statute or derived from operation of law. In Wisconsin, private subrogation agreements are ordinarily subject to the made whole doctrine. *Id.,* ¶ 16 (citing

*Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977)). However, legislatively sanctioned subrogation may override the made whole doctrine. *Id.*, ¶ 42 n.7 (citations omitted).

¶ 168. There are multiple ways to handle subrogation claims. Some of these were enumerated in *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 595–97, 511 N.W.2d 855 (1994). Wisconsin Stat. § 893.55(7) does not attempt to catalog all the possibilities or to determine the procedure to be followed in each situation.

¶ 169. The majority writes that "[a]ny interpretation of § 893.55(7) must . . . take into account that the statute does not limit the rights of claims based on subrogation." Majority op., ¶ 67. This is not in dispute. It does not follow, however, that "Wis. Stat. § 893.55(7) must be interpreted to require courts to instruct juries to be instructed to consider the collateral source payments only in determining the reasonable value of the medical services rendered." *Id.*, ¶ 72. Such an instruction ignores situations in which there is absolutely no right of subrogation or reimbursement.

¶ 170. There are many different relationships between patients and health care providers. Four broad categories come to mind. First, patients may be the beneficiaries of a government program such as Medicare or Medical Assistance that pays most or all of their medical bills. Second, patients may be direct beneficiaries of private health insurance, private self-insurance, or some other privately funded coverage that pays all or most of their medical bills. Third, patients may pay their own medical bills or have them paid by a friend or family member. Fourth, patients with no health care coverage may receive services gratuitously from providers. This categorization is intended to be illustrative, not exhaustive, and to show the problems with the majority's holding.

¶ 171. The recent case of *Meriter Hospital, Inc. v. Dane County,* 2004 WI 145, 277 Wis. 2d 1, 689 N.W.2d 627, can be used as the teaching tool. In *Meriter,* a prisoner at the Dane County jail was admitted to the hospital. Criminal charges against the prisoner were dropped on the third day of the prisoner's extended hospitalization, after his parole hold had been lifted. *Id.,* ¶ 1. This court concluded, after interpreting a statute, that the county was not obligated to pay for the prisoner's entire 34–day stay. The hospital ended up eating most of the extensive cost.

¶ 172. According to the decision, the total cost of the prisoner's care and treatment at Meriter, not including the overtime pay for the security provided, amounted to $187,569.37. *Id.,* ¶ 5. This figure was based on a calculation method known as the Diagnostic Related Group (DRG) rate. *Id.,* ¶ 9. By contrast, the government *payment* rate for the services was only $74,847.92. In fact, Dane County paid only $4,463.26. *Id.,* ¶ 8. The difference between the last two amounts was $70,384.66.

¶ 173. Suppose, hypothetically, that the hospital's treatment of the prisoner had not been excellent, that medical malpractice had injured the prisoner on the fourth day after the county stopped paying. Would the hospital have any liability for medical expenses to the prisoner-plaintiff? If so, how much? Under traditional collateral source theory, there should be no hospital liability at all *for medical expenses* because there is no *collateral* source, only the tortfeasor. Unfortunately, this result is not clearly signaled by the majority opinion.

¶ 174. Changing the hypothetical, suppose the county paid the hospital the extra $70,384.66. Would the prisoner be entitled to medical expenses of $70,384.66 from the hospital, or even $187,569.37 (less the DRG rate incurred before the malpractice)? The difference

between the $70,384.66 payment and the applicable DRG rate would have been absorbed by the hospital already, but the majority opinion implies that this difference as well as the actual payment would be subject to a damage award to the plaintiff. If the hospital had to repay the county, would the plaintiff be able to keep $70,384.66 in medical expense damages, or would the plaintiff be required to turn over the $70,384.66, less the cost of collection, to the county?[6]

¶ 175. The majority opinion in ¶ 73 asserts that Wis. Stat. § 893.55(7) leaves many questions unanswered, such as "the parties' ability to introduce evidence or argue about the obligation to repay collateral sources." In my view, it is the majority opinion that muddles the law and creates confusion. I can fathom no reason why a jury should not be permitted to receive any evidence or hear any argument on collateral source payments that will help it make a reasonable determination of medical malpractice damages, after taking into account subrogation and/or reimbursement rights and anything the plaintiff contributed to earn the payments. Under Wis. Stat. § 893.55(7), the jury must be *permitted* not to award double recovery to the plaintiff in a medical malpractice case.

## IV

¶ 176. The case at hand presents unusual circumstances. These circumstances, which are outlined in ¶¶ 9–14 of the majority opinion, must be addressed with particularity.

¶ 177. The deceased, Vance H. Lagerstrom, was 87 years old when he fell and broke his hip on Novem-

---

[6] *See Karsten v. Kaiser Found. Health Plan,* 808 F. Supp. 1253 (E.D. Va. 1992).

ber 24, 2000. Mr. Lagerstrom was admitted to Myrtle Werth Hospital, where he underwent hip replacement surgery and eventually developed lung congestion and fever. There is no evidence of any malpractice at the hospital until December 2, 2000. Consequently, Mr. Lagerstrom's health care providers were entitled to receive payment from Medicare for every day of service up to the time of malpractice. This was about seven days.

¶ 178. The mistake with the feeding tube occurred on December 2. Assuming without deciding that the defendants are liable for all medical costs after the malpractice, the fact-finder would have to determine: (A) the actual post-malpractice payments from Medicare to Myrtle Werth Hospital; (B) the "reasonable value" of the post-malpractice medical services of Myrtle Werth Hospital; (C) the actual Medicare payments to Luther Hospital; (D) the reasonable value of the medical services of Luther Hospital; (E) the actual Medicare payments to Lakeside Nursing Home; (F) the reasonable value of the medical services of Lakeside Nursing Home; (G) the actual Medicare payments to St. Joseph's Hospital; (H) the reasonable value of the medical services of St. Joseph's Hospital; (I) the actual Medicare payments to any other health care provider after the malpractice; and (J) the reasonable value of these other post-malpractice services. Against this background, medical expense damages should be treated as follows:

¶ 179. First, the plaintiff is not entitled to recover medical expense damages from the defendants for any value of medical services provided by Myrtle Werth Hospital that exceeds the actual Medicare payments to Myrtle Werth because any such damages would not only be double recovery for the plaintiff but also double liability for the tortfeasor-defendants. Such liability is simply not part of the collateral source rule.

¶ 180. Second, *if* the jury were permitted to consider the full reasonable value of medical services provided by Luther Hospital, Lakeside Nursing Home, St. Joseph's Hospital, and any other post-malpractice provider (except Myrtle Werth Hospital), the jury must be given authority to award damages or not to award damages for the "value" exceeding actual Medicare payments. The jury should not be instructed to disregard actual payments by Medicare or actual costs to Mr. Lagerstrom in determining the award of damages for past medical expenses. The jury should be fully informed of the facts, including facts about reimbursement.

¶ 181. Third, Medicare reimbursement amounts should be determined by the court and inserted in the special verdict. Mrs. Lagerstrom argues that Medicare has statutory reimbursement rights under 42 U.S.C. § 1395y(b) (2000), *codified at* 42 C.F.R. pt. 411. She quotes 42 C.F.R. § 411.24 (2004) to the effect that: "If the beneficiary or other party receives a third party payment, the beneficiary must reimburse Medicare within 60 days." The Wisconsin Academy of Trial Lawyers argues in its amicus brief that:

> The federal government is expressly granted statutory rights of reimbursement. . . . The government may seek to exercise these rights against any and all amounts recovered, regardless of their designation by the jury. Consequently, if a jury reduces or eliminates an award for medical expenses paid by Medicare, plaintiffs face the very real likelihood of a "double loss." This is because Medicare may assert its right of recovery against the entirety of the award. . . .

¶ 182. *If* these representations are accurate, Medicare could assert its right of reimbursement against the plaintiff's award for the deceased's actual medical costs, the award for pain and suffering, and the award for wrongful death.

83

¶ 183. Such a draconian result would not occur with a private insurer because of the made whole doctrine. But there appears to be a basis for such a conclusion in the Code of Federal Regulations, even though the July 30, 2001, communication from the Health Care Financing Administration to Mrs. Lagerstrom's attorney demands reimbursement for "overpayment." This dilemma illuminates why Medicare should have been joined as a plaintiff in this litigation, just as the Dunn County Department of Human Services was joined as a plaintiff in *Ellsworth*. In any event, Medicare could *not* force Lagerstrom to repay *more* than the judgment amount. *See* 42 C.F.R. § 411.37(d) (2004) ("if Medicare payments equal or exceed the judgment or settlement amount, [Medicare's] recovery amount is the total judgment or settlement payment minus the total procurement costs").

¶ 184. In my view, upon remand, the circuit court should award Medicare the precise amount of money it paid for post-malpractice medical services, plus interest, minus a proportionate share of the cost incurred by Mrs. Lagerstrom in securing this reimbursement amount. This would protect all damages awarded to Mrs. Lagerstrom and enlarge the award against which the plaintiff attorney fees are calculated, permitting a significant deduction from Medicare's reimbursement.

## V

¶ 185. The court gave the jury the following instruction:

Estate's Recovery for Medical, Hospital, and Funeral Expenses

Subdivision (b) of question 4 asks what sum of money will fairly and reasonably compensate the Estate of Vance Lagerstrom for the reasonable value of

the medical and hospital expenses necessarily and reasonably incurred in the care of him from the date of the Ensure infusion incident to the time of his death, because of the injuries resulting to him as a result of the Ensure incident.

In medical negligence cases such as this one, you are allowed to hear testimony regarding payments made by Medicare, insurance and other sources. The law does not require you to reduce the sum found by you to be the reasonable value of the medical services of which the negligence of the defendants was a cause by any payment made by any such source. You may do so. It is for you the jury to decide.

¶ 186. The majority contends that the instruction is infirm because it does not alert the jury that the estate is potentially obligated to reimburse Medicare. Majority op., ¶ 82.

¶ 187. This criticism may be legitimate because of Medicare's potential statutory claim on the plaintiff's *other* damages. But the deficiency can be corrected by remanding the case to the circuit court for an award of Medicare's damages, as outlined above in ¶¶ 59, 62.

¶ 188. There is no need to order a new trial on the issue of hospital and medical expenses. Indeed, ordering a new trial on damages alone is unfair and prejudicial to the defendants. *See Leonard v. Employers Mut. Liab. Ins. Co.,* 265 Wis. 464, 470, 62 N.W.2d 10 (1953). A jury should be able to hear all the facts and evaluate the plaintiff's demand for medical expenses in the context of the whole case.

¶ 189. For the reasons stated above, I respectfully dissent.

¶ 190. I am authorized to state that Justice JON P. WILCOX joins this opinion.